✓ FILED ____ LODGED
____ RECEIVED ____ COPY

MAR 2 6 2012

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ P DEPUTY

1

2    **IN THE UNITED STATES DISTRICT COURT**

3    **FOR THE DISTRICT OF ARIZONA**

     **PRESCOTT DIVISION**

4

5    GREGORY YOUNT                              )    Case No.  3:11-cv-08171-FJM
                                                )
6                        Plaintiff,             )
                                                )
7      v.                                       )    **PLAINTIFFS' OPPOSITION TO**
                                                )    **MOTION TO INTERVENE OF**
8    KEN SALAZAR, Secretary of the Interior;    )    **GRAND CANYON TRUST ET AL.**
     and                                        )
9    U.S. BUREAU OF LAND MANAGEMENT             )
                                                )
10                       Defendants.            )

11

12   Gregory Yount
     807 W. Butterfield Rd
13   Chino Valley, Arizona 86323
     928-899-7029
14   *Plaintiff Pro Se*

15   ## Introduction

16          In this brief, Plaintiff Gregory Yount, responds to Motion to Intervene, filed jointly by

17   Applicants Grand Canyon Trust, the Havasupai Tribe, Center for Biological Diversity, Sierra

18   Club, and National Parks Conservation Association (collectively, "Applicants" and/or "Movant

19   Intervenors") .

20          Plaintiff respectfully request that the Court deny the Motion (Dkt. No. 14) in its entirety.

21

22

1 of 15 - *OPPOSITION TO MOTION TO INTERVENE*

1    Intervention should be denied because applicants have not satisfied the second and forth

2    requirement for intervention as of right under Federal Rule of Civil Procedure 24(a)(2), that is,

3    the applicant must claim a 'significantly protect-able' interest relating to the property or

4    transaction which is the subject of the action and the Applicants' interests are not adequately

5    represented by the parties to the action. In this case, the Federal Defendants adequately represent

6    Applicants' interests and the Applicant has not demonstrated a protect-able interest relating to the

7    legality of the Defendant's actions under NEPA or any other law.  The only issue at hand, is

8    whether the Northern Arizona Withdrawal (NAW) was properly conducted under NEPA.

9    Movant Intervenor's environmental and cultural interests have nothing to do with whether the

10   NAW is legal, which is the sole and only issue to be decided by the Court.

11   Intervention should be denied because Applicants have failed to demonstrate a

12   significantly protect-able interest and to demonstrate that the Federal Defendants will not make

13   the same arguments as Applicants and have thus failed the second and forth prong of the four

14   rule test for intervention as of right.

15

16   **BACKGROUND**

17   Plaintiffs' lawsuit concerns the unlawful withdrawal and closure of 1 million acres of land

18   in Northern Arizona as described by Defendant Salazar's Record of Decision ("ROD") for the

19   Northern Arizona Proposed Withdrawal ("NAPW") signed on January 9, 2012.

20   In the 1984 Arizona Wilderness Act, Congress, *inter alia*, designated over 250,000 acres

21   of federal land on or near the Arizona Strip in northern Arizona as wilderness and released about

22

2 of 15 - *OPPOSITION TO MOTION TO INTERVENE*

1   600,000 acres of land in the same area for multiple use, including uranium mining. Pub. L. 98–

2   406, Title III, 98 Stat 1485 (August 28, 1984).

3       This portion of the Act was the result of historic compromise between environmental

4   groups, uranium mining interests, the livestock industry, and others. *See, e.g.*, The Northern

5   *Arizona Mining Continuity Act of 2011: Hearing on H.R. 3155 Before the H. Subcomm. on*

6   *National Parks, Forests and Public Lands* (November 3, 2011) (Statement of Sen. John

7   McCain), *available at*

8   http://naturalresources.house.gov/UploadedFiles/McCainOpening11.03.11.pdf.

9       On July 21, 2009, Defendant Salazar proposed to withdraw from location and entry under

10   the Mining Law approximately 633,547 acres of public lands and 360,002 acres of National

11   Forest System lands on and near the Arizona Strip for up to 20 years. 74 Fed. Reg. 35,887–88

12   (July 21, 2009). A substantial portion of these lands were made available for multiple uses,

13   including mining, under the compromise that resulted in the 1984 Arizona Wilderness Act.

14       The Arizona Wilderness Act of 1984 designated lands not set aside for wilderness, were

15   to be administered under the "multiple use doctrine" and were ***open*** to mineral entry under the

16   Mining Law. The Congress specifically recognized the NAPW area had a high potential for

17   uranium production and encouraged the staking of claims and the mining of uranium on these

18   lands. The southern parcel of the NAPW area is in the Tusayan Ranger District of the Kaibab

19   National Forest and has been managed under the multiple use doctrine and was open to mineral

20   entry under the Mining Law.

21       The NAPW area lands were never designated to be managed for their wilderness

22   characteristic as the Arizona Wilderness Act makes clear that multiple use activities could be

1    conducted up to the boundaries of designated wilderness areas and that buffer zones were not to

2    be created.

3          The Defendant used his withdrawal authority under Section 204(c) of the Federal Land

4    Policy Management Act to unilaterally impose his will, at the behest of environmental groups

5    such as the Applicants, in contradiction to the express intent of Congress as expressed by the

6    Arizona Wilderness Act of 1984. Because the proposed withdrawal was a major Federal action,

7    the Defendant had to comply with the requirements of NEPA and so ordered an EIS be written to

8    inform a withdrawal decision.

9          The resultant EIS is the foundation of Plaintiffs complaint. Although the FEIS does not

10   conform to the requirements of NEPA on so many levels, it is clear to see that the EIS was

11   manipulated to provide some modicum of cover for the Defendant to justify a withdrawal.

12   However, this attempted cover was achieved by unlawfully ignoring the requirements of NEPA

13   and by violating the establishment clause of the Constitution. The FEIS, even as written, does not

14   provide sufficient rationale for the Defendant's ROD, such that this decision cannot be

15   considered anything but arbitrary and capricious under the APA.

16         Prior to January 20, 2009, the Department of the Interior's position regarding the land in

17   the "NAPW" area was consistent with the Arizona Wilderness Act. After this time, the new

18   Secretary of the Interior, Ken Salazar, at the admitted urging and lobbying of the Applicants and

19   various other supportive legislators (for example Rep. Grijalva) decided to propose a withdrawal

20   for the NAPW lands despite there being no evidence that current laws and regulations were

21   inadequate to protect the environmental and cultural values of these lands.

22

4 of 15 - *OPPOSITION TO MOTION TO INTERVENE*

1    The Applicants and their supporters worked hand in hand with the Defendant to actualize

2    the proposed withdrawal process. Although the FEIS for the NAPW provides no justification for

3    choosing Alternative B, a complete withdrawal, the Defendant chose this alternative anyway. The

4    Defendant's rationale for choosing the preferred alternative was not based on the facts or science

5    in the Draft EIS, but was in response to the comments submitted (part of the Draft EIS process)

6    as a result of an email campaign orchestrated by the Applicants. In essence, the Defendant took a

7    vote. Tallying those emailed form letters that supported a complete withdrawal, and then

8    "deciding" on the preferred alternative in the Applicant's favor.

9    The Defendant deferred to Applicant's and their supporter's desires for a total withdrawal

10   (Alternative B), even though substantive comments submitted demonstrated that the Draft EIS

11   was not in compliance with NEPA and did not support Alternative B as the preferred alternative.

12   The Final EIS was published on October 26, 2011 with very little modification as a result

13   of the comments received. The comments submitted by Plaintiff and others were ignored and

14   dismissed without substantive analysis as required by NEPA. The Defendant demonstrated, by

15   this action, a single minded commitment to a predetermined path toward a withdrawal as desired

16   and lobbied for by the Applicants.

17                                          **ARGUMENT**

18              **APPLICANTS ARE NOT ENTITLED TO INTERVENE AS OF RIGHT**

19   The party seeking intervention bears the burden of showing the requirements for

20   intervention are met. Southwest Center for Biological Diversity v. Berg, 268 F.3d 810,

21   820 (9th Cir. 2001) (noting importance of "nonconclusory allegations" and supporting

22   evidence). An applicant to intervene as of right must demonstrate (1) the application is

5 of 15 - *OPPOSITION TO MOTION TO INTERVENE*

1  "timely;" (2) "the applicant claims an interest relating to the property or transaction which

2  is the subject of the action;" (3) the applicant's interest "may as a practical matter" be

3  "impair[ed] or impede[d];" and (4) "the applicant's interest is [not] adequately represented

4  by existing parties." Fed. R. Civ. P. 24(a)(2).

5        Plaintiffs does not dispute that the Applicants' Motion is timely. However, as

6  detailed below, Applicants have not carried their burden to intervene as of right.  The Applicant

7  has not demonstrated a protect-able interest relating to the legality of the Defendant's actions

8  under NEPA or any other law, and that the Federal Defendants cannot or will not adequately

9  represent the Applicants' interests.

10       **A.    Applicant's Interests are Fabricated and Exaggerated**

11       Applicants' have fabricated and exaggerated their claims to the point that it is difficult to

12  separate their actual protect-able interests from their blatant misinformation campaigns.

13  Applicants state in their motion to intervene that the withdrawal was to prevent the impacts of

14  unrestrained uranium exploration and mine development and that the relief that Plaintiff seeks

15  would lead to unlimited staking of new claims.

16       Uranium exploration and mining is hardly unrestrained. Exploration beyond casual use

17  requires a Plan of Operation and exploration drilling requires an Environmental Assessment (EA)

18  or an EIS. Approval of a Mining Plan of Operation would require an individual EIS for a specific

19  project given today's circumstances. There are a host of State and Federal requirements and

20  permits to meet and acquire. This is hardly unrestrained development. After the Arizona

21  wilderness Act of 1984 was passed, mining claims for uranium peaked at about 27,000 in

22  number. As of 2009, there were just over 10,000 mining claims located within the three

6 of 15 - *OPPOSITION TO MOTION TO INTERVENE*

1    segregation parcels. Currently there are about 3,000 mining claims. Compared to the activities

2    that existed when the lands defined in the NAPW area were first being explored, current activity

3    is downright sedate. Applicants claim that there will be massive claim staking is a fabrication.

4    Massive claim staking would only enlarge the coffers of the BLM, as only a very few claims

5    would ever be explored beyond geochemical and geophysical means. Mining claims do not equal

6    exploration disturbance or operating mines.

7          Applicants claim their interests may be impaired given the well-documented and

8    damaging impacts of uranium mining. This is false for breccia pipe uranium mining. Implying

9    that uranium mining issues in other areas or regions outside the NAPW area are relevant to

10   breccia pipe mining is deceitful and calls their claim for impairment of their interests into

11   question. The NAPW EIS does not support a claim that past mining in accordance with current

12   laws, regulations, and reclamation requirements poses more than a negligible environmental

13   affect.

14         Applicants use words like threaten, create a risk, potentially, could have the potential to

15   cause, etc., to describe the impairments of their interests. This word usage indicates that "fear of

16   risk" from uranium exploration and mining is the impairment of their interests. However, fear of

17   the supposed risk does not equate to there actually *being* a substantial risk. Applicants use these

18   words to exaggerate their supposed interests.

19         Applicants at page 4 of their memorandum in support of motion to intervene state that

20   "Uranium mining also threatens to transform portions of the region's wild landscapes into

21   industrial zones with webs of roads and power lines, mine facilities and drill rigs, and hundreds

22   of thousands of truck trips. Such development would fragment and disturb habitat and sensitive

7 of 15 - *OPPOSITION TO MOTION TO INTERVENE*

1    areas, including nesting areas for the endangered California condor, calving and fawning grounds

2    for mule deer, elk, and antelope, and critical big-game winter range. See FEIS at 4-140 – 4-144.

3    Noise, pollution, visual disturbance, and roads would also diminish the area's high degree of

4    naturalness and outstanding opportunities for solitude and primitive forms of recreation. See id.

5    at 4-227 – 4-236. ***These impacts make it difficult for the lands to be protected by Congress as***

6    ***wilderness*** (emphasis added)**.** Past and renewed uranium mining already has impacted long-time

7    visitors to the region by disturbing the area's uncommon natural beauty and solitude. See, e.g.,

8    Clark Decl. ¶¶ 20- 28; McKinnon Decl. ¶¶ 11-12, 17.

9        The NAPW EIS found the above described impacts to the lands in the NAPW to be

10    minimal. Characterizing the use of 1300 acres of land spread out over 20 years and 1 million

11    acres of land as an industrial zone is taking hyperbole a bit far into the realm of deceit. The lands

12    in question are multiple use lands, meaning many different uses and that users must share use of

13    the land. These lands are not managed for solitude. Wilderness areas are. The Applicants claim

14    that the supposed impacts would " make it difficult for the lands to be protected by Congress as

15    wilderness." Except, Congress has already specified these land to be multiple use and open to

16    mineral entry (uranium mining) by passing the Arizona Wilderness Act of 1984. To suggest or

17    imply that there is support for overturning this Act in Congress is deceitful.

18        Applicants at page 6 of their memorandum in support of motion to intervene state "With

19    the Proposed Intervenors' support, in March 2008 Arizona Congressman Raul Grijalva

20    introduced legislation to permanently withdraw over one million acres surrounding the Park from

21    new mining claims...... The lands proposed for protection in Rep. Grijalva's bill are the very

22    same lands DOI ultimately withdrew in January 2012." Continuing on page 7 "In the context of

8 of 15 - *OPPOSITION TO MOTION TO INTERVENE*

1   this political and legal pressure, DOI changed course.....In July 2009, DOI announced a proposal

2   to withdraw the one million acres identified in Rep. Grijalva's legislation from mineral entry for

3   20 years....."

4          The DOI changed course because the Obama Presidency started in January of 2009 and a

5   new Secretary of the Interior, Ken Salazar, was chosen to lead the DOI. The course change was a

6   political one, and the new Secretary, at the urging of Rep. Grijalva and the Applicants, initiated a

7   two year segregation of the NAPWA so that Defendant could make a subsequent withdrawal of

8   these lands from the Mining Law. The Applicants have worked hand in glove, ying and yang,

9   with the Defendant to ensure that these lands were indeed withdrawn.

10         The Applicants' fabricated and exaggerated claims make it difficult to separate their

11  actual protect-able interests from their overblown rhetoric, however the issue at hand is not

12  whether Movant Intervenors have an interest in the NAPW area lands for their environmental

13  and cultural resource interests, but whether their interests are "significantly protect-able

14  interests." Movant Intervenor's environmental and cultural interests have nothing to do with

15  whether the NAW was legal, which is the sole and only issue to be decided by the Court.

16         Movant Intervenors use *Southwest Center for Biological Diversity v. Berg* to support the

17  proposition that courts "construe Rule 24(a) liberally in favor of potential intervenors" and

18  decision are based "primarily on practical considerations." 268 F.3d 810, 818 (9th Cir. 2001).

19  Similar to *Forest Conservation Council*, movant intervenors were granted intervention of right

20  because they held contracts and owned projects affected by the decision.  In this case, the

21  Applicant Contractors were allowed intervention, because the City could not be expected to

22  adequately represent and safeguard the Applicant Contractors contractual rights.  Here,  Movant

9 of 15 - *OPPOSITION TO MOTION TO INTERVENE*

1    Intervenors hold no such contractual rights or property rights, and once again, Movant

2    Intervenors environmental and cultural resource protection interests do not add to whether the

3    DOI properly followed NEPA.

4    **B.    Movant Intervenors Interest are Adequately Represented**

5          Fed. R. Civ. P. 24(a) requires "(1) the motion must be timely; (2) the applicant must

6    claim a 'significantly protectable' interest relating to the property or transaction which is the

7    subject of the action; (3) the applicant must be so situated that the disposition of the action may

8    as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's

9    interest must be inadequately represented by the parties to the action." *Wilderness Society v.*

10   *U.S. Forest Service*, 630 F.3d 1173, 1177 (9th Cir. 2011).  Movant Intervenors do not have a

11   significantly protect-able interest, and if a significantly protect-able interest is found, Movant

12   Intervenors fail to demonstrate that their interests are inadequately represented by the

13   Defendants.

14         Movant Intervenors' claim Defendants will not adequately represent their "focused

15   interests on environmental and cultural resource protection," because Defendants are "'required

16   to represent a broader view than the more narrow, parochial interests' of the applicant

17   organizations and their members."  Memo. in Supp. of Mot. of Grand Canyon Trust et al. to

18   Intervene as Defendants, Docket 15, at 15, March 12, 2012.  Movant Intervenor's state, "the

19   Proposed Intervenors' interests focus more narrowly on environmental and cultural resource

20   protection of the Grand Canyon region," rather than the broad multiple use mandate Defendants

21   are bound by in FLPMA. *Id.*

22

10 of 15 - *OPPOSITION TO MOTION TO INTERVENE*

1        The Movant Intervenors' have exactly the same shared interest as the Federal Defendants.

2    There is absolutely no light between them. The Applicants argue that the ….. "BLM – which

3    manages over 600,000 acres of the million-acre withdrawal – has been directed by Congress to

4    manage its lands, inter alia, — "in a manner which recognizes the Nation's need for domestic

5    sources of minerals", and for multiple uses including mining, not just for environmental

6    protection."

7        While this should be true, the DOI and BLM in their three year pursuit of this 20 year

8    withdrawal have totally abandoned these directives in regards to the NAPW lands, and it is

9    beyond reason to believe that they will be influenced in any way by these responsibilities and

10    abandon or pursue less vigorously the defense of their FEIS and ROD.

11        "Although the burden of establishing inadequacy of representation may be minimal, the

12    requirement is not without teeth." *Prete v. Bradbury*, 438 F.3d 949, 956 (9th Cir. 2006) (quoting

13    *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)); *see also Trbovich v. United Mine*

14    *Workers of America*, 404 U.S. 528, 538 n.10 (1972). "When an applicant for intervention and an

15    existing party have the same ultimate objective, a presumption of adequacy of representation

16    arises. If the applicant's interest is identical to that of one of the present parties, a compelling

17    showing should be required to demonstrate inadequate representation." *Id*. "Additionally, 'there

18    is also an assumption of adequacy when the government is acting on behalf of a constituency that

19    it represents. In the absence of a very compelling showing to the contrary, it will be presumed

20    that a state adequately represents its citizens when the applicant shares the same interest.'" *Id*.

21        According to the 9th Circuit, in assessing the adequacy of representation, the court

22    considers "whether the Secretary will undoubtedly make all of the intervenor's arguments,

11 of 15 - *OPPOSITION TO MOTION TO INTERVENE*

1    whether the Secretary is capable of and willing to make such arguments, and whether the

2    intervenor offers a necessary element to the proceedings that would be neglected." *Sagebrush*

3    *Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) and *Forest Conservation Council v.*

4    *U.S. Forest Service*, 66 F.3d 1489, 1499-1500 (9th Cir. 1995) (citing *County of Fresno v.*

5    *Andrus*, 622 F.2d 436, 438-39 (9th Cir. 1980).

6            Every single cause of action in the Complaint addresses failures by Defendants to follow

7    NEPA procedures.  Therefore, the only issue for this Court to decide is whether Defendants

8    violated NEPA according to each cause of action.  Defendants adequately represent any interest

9    Movant Intervenors may have in defending their actions under NEPA.  Moreover, Movant

10   Intervenors' "environmental and cultural resource protection" interests do not offer a necessary

11   element to determining whether DOI abided by NEPA.

12           This applies to the Havasupai Tribe as well.  Native American Tribes were permitted to

13   intervene in *Arizona v. California*, because the case was brought to determine water rights, which

14   Native American Tribes held.  460 U.S. 605, 613-15 (1983).  Similarly, in *Glamis Imperial*

15   *Corp. v. U.S. Dep't of the Interior*, the Quechan Indian Tribe's interests in environmental and

16   cultural resource protection may not have been adequately protected by DOI in an action

17   challenging DOI's withdrawal pursuant to FLPMA.  Though a similar scenario exists here, the

18   present action is solely a challenge to whether NEPA was violated.  Whether FLPMA was

19   violated is not at issue, and therefore, the difficulty in DOI adequately representing the

20   Havasupai's environmental and cultural resource interests is irrelevant to whether NEPA was

21   violated.

22

1        Both *Idaho Farm Bureau Federation v. Babbitt*, 58 F.3d 1392 (9th Cir. 1995) and *County*

2   *of Fresno v. Andrus*, 622 F.2d 436 (9th Cir. 1980) state that an agency who reluctantly conducts a

3   rulemaking is unlikely to adequately defend such rulemaking to the benefit of those groups who

4   favor it.  There is no indication of this occurring here.  Soon after Secretary Salazar was

5   appointed, Defendants initiated the 2-year segregation to study the effects of uranium mining on

6   the waters of the Grand Canyon watershed.  When the EIS was not complete prior to the

7   expiration of the 2-year segregation, Defendants declared an emergency withdrawal under

8   FLPMA until the EIS could be completed.  Prior to review of the public comments, Secretary

9   Salazar also decided to implement the full withdrawal of 20 years.  This decision, prior to review

10  of contradictory public comments and completion of the FEIS, demonstrate that Defendants

11  adequately represent Movant Intervenors' interests.  Defendants did not have to segregate or

12  make an emergency withdrawal of the NAPW lands during the environmental review process

13  and the subsequent decision to implement the full withdrawal prior to completion of the EIS

14  process. These actions shows Defendants commitment to its course of action and willingness to

15  defend its actions.  Further, almost three years of work has gone into the withdrawal by

16  Defendants, with the FEIS being filed in January, 2012.  It is extremely unlikely that Defendants

17  would not adamantly defend its actions and its work under NEPA.  Because Defendants initiated

18  the NAW and worked so long to implement it, despite significant opposition and contradictory

19  science, no reason exists to doubt that Defendants cannot adequately defend its actions under

20  NEPA.

21

22

1    **Conclusion**

2          Movant Intervenors and the Defendant share the "same ultimate objective" – that is, to

3    defend Federal Defendants' FEIS and subsequent ROD to withdraw over 1 million acres of land

4    in the NAPWA to be found Legal. However, applicants have not demonstrated a "significant"

5    protect-able interest under any law in which the Defendant will not, with great vigor and

6    expertise, defend those interests.

7          Every single cause of action in the Complaint addresses failures by Defendants to follow

8    NEPA procedures.  Therefore, the only issue for this Court to decide is whether Defendants

9    violated NEPA according to each cause of action.  Defendants adequately represent any interest

10   Movant Intervenors may have in defending their actions under NEPA.  Moreover, Movant

11   Intervenors' "environmental and cultural resource protection" interests do not offer a necessary

12   element to determining whether DOI abided by NEPA.

13         Defendant Salazar has stated that he will vigorously defend his ROD saying "I feel very

14   confident in our decision, and I think it'll withstand any legal challenge that is being made," in

15   comments made after addressing the Senate Energy and Natural Resources Committee on

16   February 28, 2012.

17         Movant Intervenors have failed the test for "intervention as of right" and Plaintiff begs

18   the Court to deny such.

19         In Regards to Movant Intervenors' request for permissive intervention, Plaintiff begs the

20   Court to deny "permissive intervention" for all the same reasons intervention of right is denied.

21         Alternatively, the Court should limit Applicants' intervention to the remedy phase of the

22   case.

14 of 15 - *OPPOSITION TO MOTION TO INTERVENE*

1    Respectfully submitted,

2    Dated this 23th day of March 2012

3

4

5    Gregory Yount
     807 W. Butterfield Rd

6    Chino Valley, Arizona 86323
     928-899-7029

7    *Plaintiff Pro Se*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

15 of 15 - *OPPOSITION TO MOTION TO INTERVENE*