**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gregory Yount, | No. CV 11-08171-PCT-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| Ken Salazar, Secretary of the Interior; U.S. Bureau of Land Management, | |
| Defendants. | |

We have before us the motion of Grand Canyon Trust et al. to intervene as defendants (doc. 14), proposed intervenors' memorandum in support (doc. 15), plaintiff's opposition (doc. 29), and proposed intervenors' reply (doc. 36). The Grand Canyon Trust ("GCT") was incorporated in 1985 to protect and restore the Colorado Plateau. (Doc. 15, ex. 4 ¶ 3). The Center for Biological Diversity ("CBD") is a non-profit conservation organization headquartered in Tucson, Arizona which works to protect species close to extinction. (Doc. 15, ex. 5 ¶ 3). The Sierra Club is a national non-profit environmental organization. (Doc. 15, ex. 6 ¶ 2). The National Parks Conservation Association ("NPCA") is an organization dedicated to protecting national parks. (Doc. 15, ex. 7 ¶ 2). The Havasupai Tribe is a federally recognized Indian tribe with approximately 776 members. The Havasupai Indian Reservation covers about 188,000 acres in and around the Grand Canyon. (Doc. 15, ex. 8 at 1). GCT, CBD, Sierra Club, NPCA, and the Havasupai Tribe move to intervene as a

matter of right and permissively, pursuant to Rule 24, Fed. R. Civ. P. Federal defendants do not oppose the motion.

Grand Canyon National Park, located in northern Arizona, attracts millions of tourists each year. Most of the land surrounding the park is owned by the United States Forest Service, the state of Arizona, Indian tribes, and the Bureau of Land Management ("BLM"), an agency within the Department of the Interior. This land is rich in natural resources, including uranium. Mining activities in the Grand Canyon watershed began in the 1860s and uranium mining began in the 1950s.

On March 11, 2008, a bill to enact the Grand Canyon Watersheds Protection Act of 2008 was introduced to permanently withdraw over one million acres from mining location and entry, as well as from mineral leasing, geothermal leasing, and mineral material sales. H.R. 5583, 110th Cong. (2008). This proposal encompassed three parcels of federal land north and south of Grand Canyon National Park. In June 2008, the House Natural Resources Committee issued a resolution identifying uranium mining on this land as an emergency situation and directing the Secretary of the Interior to withdraw the land, pursuant to the Federal Land Policy and Management Act of 1976 ("FLPMA"), 43 U.S.C. § 1714(e). (Doc. 15, ex. 12). The Secretary did not withdraw the land at that time. The legislative withdrawal was reintroduced in 2009 and 2011. H.R. 644, 111th Cong. (2009); H.R. 855, 112th Cong. (2011).

On July 21, 2009, the Secretary closed approximately one million acres surrounding the Grand Canyon to mining location and entry for two years, pursuant to the FLPMA. The withdrawal area covered much of the same area as the earlier bill. The Secretary gave notice that he proposed to withdraw the land for up to 20 years. Notice of Proposed Withdrawal, 74 Fed. Reg. 35,887 (July 21, 2009). He also ordered the preparation of an Environmental Impact Statement ("EIS") pursuant to the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. § 4332. See Notice of Intent, 74 Fed. Reg. 43,152 (Aug. 26, 2009).

In February 2011, the BLM released a Draft EIS ("DEIS") to the public. Notice of Availability, 76 Fed. Reg. 9594 (Feb. 18, 2011). The DEIS contained four alternatives,

including no action, withdrawing all land under consideration (the preferred alternative), withdrawing approximately 700,000 acres, or withdrawing approximately 300,000 acres. Plaintiff submitted comments detailing purported errors, omissions, and new information. The Final EIS ("FEIS") was published and made available for public comment in October 2011. Notice of Availability, 76 Fed. Reg. 66,747 (Oct. 27, 2011). On January 9, 2012, the Secretary signed the Record of Decision ("ROD") adopting Alternative B and withdrawing approximately 1,006,545 acres of BLM and USFS land from mining location and entry for 20 years, subject to valid existing rights.

Plaintiff owns two hardrock mining claims for uranium in the Tusayan Ranger District in the Kaibab National Forest south of the Grand Canyon. He has not yet begun drilling on this land, but believes his claims contain uranium. Due to the withdrawal, he is now unable to conduct exploratory drilling.

Plaintiff filed his complaint on November 11, 2011 and filed a second amended complaint on March 15, 2012, seeking injunctive and declaratory relief. He contends that the FEIS violates NEPA and its implementing regulations. He also claims that the ROD violates the Establishment Clause of the First Amendment to the United States Constitution because it appears to endorse the religious beliefs of American Indians. Proposed intervenors support the withdrawal.

One who timely "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest," is entitled to intervene of right. Rule 24(a)(2), Fed. R. Civ. P. This Rule is construed broadly in favor of potential intervenors. United States v. City of Los Angeles, 288 F.3d 391, 397 (9th Cir. 2002). There are four components to the Rule.

> (1) [T]he motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

1  Wilderness Soc'y v. U.S. Forest Serv., 630 F.3d 1173, 1177 (9th Cir. 2011) (quoting Sierra
2  Club v. U.S. EPA, 995 F.2d 1478, 1481 (9th Cir. 1993)). Plaintiff contends the second and
3  fourth elements are not met.

4  "To determine whether putative intervenors demonstrate the 'significantly protectable'
5  interest necessary for intervention of right in a NEPA case, the operative inquiry should be
6  whether the 'interest is protectable under some law' and whether 'there is a relationship
7  between the legally protected interest and the claims at issue.'" Wilderness Soc'y, 630 F.3d
8  at 1180. The proposed intervenor is not required to show his interest is protected by the
9  statute under which the litigation is brought. Sierra Club, 995 F.2d at 1484. "[A] party has
10 a sufficient interest for intervention purposes if it will suffer a practical impairment of its
11 interests as a result of the pending litigation." California ex rel. Lockyer v. United States,
12 450 F.3d 436, 441 (9th Cir. 2006).

13 We take as true all well-pleaded, non-conclusory allegations made in support of an
14 intervention motion. Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 819-20 (9th
15 Cir. 2001). Proposed intervenors assert many interests, such as protecting wildlife,
16 maintaining the environment, preserving scenic vistas and the silence of unpopulated areas,
17 avoiding harm to members of the Havasupai Tribe, recreation, tourism, livestock grazing, and
18 human health. According to proposed intervenors, these interests will be negatively affected
19 if uranium mining is allowed in the area – the mines and associated infrastructure will blight
20 the landscape and disrupt or destroy culturally significant sites, increased traffic will disturb
21 the region's remote character and important wildlife habitats, dust and noise will damage
22 recreation and tourism, and radiation from uranium could contaminate groundwater, harming
23 American Indians, hikers, campers, and animals.

24 Plaintiff characterizes proposed intervenors' interests as "fabricated and exaggerated."
25 (Doc. 29 at 9). But proposed intervenors' allegations are not frivolous. Cf. Berg, 268 F.3d
26 at 820 (instructing courts to take allegations in motion and supporting declarations as true
27 "absent sham, frivolity or other objections"). We accept their allegations as true for purposes
28 of this motion and conclude they have asserted interests that may be protectable under

- 4 -

NEPA, FLPMA, or the Endangered Species Act. (Doc. 36 at 9 n.5). These protectable interests are related to the claims at issue and the property which is the subject of this action. If we void the ROD and enjoin defendants from withdrawing the land, plaintiff and others will likely be able to conduct exploratory drilling and move towards creating new mines. Increased mining could cause negative effects like those noted above, impairing the proposed intervenors' interests.

In addition, proposed intervenors' involvement in the legislative and administrative process supports their right to intervene. In cases in which public interest groups have been allowed to intervene, generally "these groups were directly involved in the enactment of the law or in the administrative proceedings out of which the litigation arose." Nw. Forest Res. Council v. Glickman, 82 F.3d 825, 837 (9th Cir. 1996). Proposed intervenors have been directly involved in this withdrawal through testifying before Congress in support of the bill and submitting comments to the DEIS. (Doc. 15, ex. 3 (testimony of vice chairman of the Havasupai Tribe before the Subcommittee on National Parks, Forests and Public Lands of the House Natural Resources Committee); ex. 4 ¶ 6 (description of GCT's participation in House hearing); ex. 5 ¶¶ 24, 26, 31 (description of CBD's work with Congress, congressional testimony, and submission of comments to DEIS); ex. 6 ¶ 6 (submission of comments to DEIS by Sierra Club); ex. 7 ¶ 12 (submission of comments to DEIS by NPCA)). Even plaintiff acknowledges the close involvement of intervenors in the withdrawal process. "The Applicants have worked hand in glove, ying [sic] and yang, with the Defendant to ensure that these lands were indeed withdrawn." (Doc. 29 at 9). Proposed intervenors have spent years trying to achieve the outcome that resulted from the ROD. If plaintiff prevailed, their efforts in support of legislative and administrative withdrawal would be undermined. Their direct involvement in the withdrawal supports their contention that they have significantly protectable interests relating to the property that is the subject of this action.

Under the fourth and final element of the test for intervention, proposed intervenors must show that the current defendants will not adequately represent their interests. "[I]ntervention of right does not require an absolute certainty that a party's interests will be

1  impaired or that existing parties will not adequately represent its interests." <u>Citizens for
2  Balanced Use v. Montana Wilderness Ass'n</u>, 647 F.3d 893, 900 (9th Cir. 2011). The
3  requirement of inadequate representation "is satisfied if the applicant shows that
4  representation of his interest 'may be' inadequate; and the burden of making that showing
5  should be treated as minimal." <u>Trbovich v. United Mine Workers of Am.</u>, 404 U.S. 528, 538
6  n.10 (1972). We consider "whether the Secretary will undoubtedly make all of the
7  intervenor's arguments, whether the Secretary is capable of and willing to make such
8  arguments, and whether the intervenor offers a necessary element to the proceedings that
9  would be neglected." <u>Sagebrush Rebellion, Inc. v. Watt</u>, 713 F.2d 525, 528 (9th Cir. 1983).
10 Adequacy of representation is measured "in relation 'to the subject of the action,'" not just the
11 particular issue before us. <u>Id.</u>; <u>Berg</u>, 268 F.3d at 823.

12 Proposed intervenors have shown that their interests may be inadequately represented
13 by defendants. Their interests are focused on environmental and cultural preservation, while
14 the government manages the land at issue for multiple uses, including mining. Proposed
15 intervenors and defendants have often been on opposing sides of litigation regarding mining
16 in this area and other environmental issues.

17 Proposed intervenors have met the required elements for intervention of right.
18 Accordingly, **IT IS ORDERED GRANTING** proposed intervenors' motion to intervene
19 (doc. 14).

20 DATED this 19th day of April, 2012.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge