IGNACIA S. MORENO, Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
DOMINIKA TARCZYNSKA, Trial Attorney
New York Bar No. 4431573
JOHN S. MOST, Trial Attorney
Virginia Bar No. 27176
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044
 (202) 305-0447 (Tarczynska)
 (202) 616-3353 (Most)
 (202) 305-0506 (fax)
Dominika.Tarczynska@usdoj.gov
John.Most@usdoj.gov
*Counsel for Federal Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
PRESCOTT DIVISION**

| | |
|---|---|
| GREGORY YOUNT,<br><br>   Plaintiff,<br><br>   v.<br><br>KEN SALAZAR, SECRETARY OF THE INTERIOR, *et al.*,<br><br>   Defendants.<br><br>and<br><br>GRAND CANYON TRUST, *et al.*,<br><br>   Intervenor Defendants. | CASE NO. 3:11-cv-08171-FJM<br><br>**FEDERAL DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT** |

**TABLE OF CONTENTS**

ARGUMENT ................................................................................................................................ 1

    I.    Plaintiff's Claims Fails to Satisfy Article III's Case or Controversy Requirement ........................................................................................................ 1

        A.    Plaintiffs Lack Article III Standing ....................................................... 1

        B.    Plaintiff's Claims are Unripe ................................................................ 5

    II.    Plaintiff's NEPA Claims Fail to Demonstrate Prudential Standing ............... 6

CONCLUSION ......................................................................................................................... 12

Federal Defendants submit the following reply brief in support of their Motion to Dismiss the Second Amended Complaint ("SAC"). Dkt. 33 ("Mem.").

Plaintiff's challenge to the decision of the Secretary of the Interior to withdraw approximately one million acres of public land near the Grand Canyon from location and entry under the Mining Law of 1872, subject to valid existing rights, should be dismissed because Plaintiff fails to demonstrate standing and ripeness. Plaintiff is a mining prospector, *see* SAC ¶¶ 13-14, who holds two unpatented mining claims of undetermined validity, and contends that Federal Defendants failed to comply with the National Environmental Policy Act, 42 U.S.C. §§ 4321 *et seq.* ("NEPA") and violated the Establishment Clause. Dkt. 27 (SAC). Plaintiff's opposition brief ("Opp."), Dkt. 44, and supporting declaration, *id.*, fail to establish this Court's jurisdiction. Accordingly, Federal Defendants ask the Court to dismiss the SAC.

## ARGUMENT

### I. Plaintiff's Claims Fail to show an Article III Case or Controversy.

To establish an Article III case or controversy, a plaintiff must demonstrate, among other things, standing and ripeness. The SAC fails to demonstrate either, and Plaintiff's opposition brief does not cure the SAC's defects. As we explain below, the action should be dismissed for lack of jurisdiction.

### A. Plaintiff Lacks Article III Standing

As explained in Federal Defendants' opening brief, Mem. at 10, a plaintiff invoking the Court's jurisdiction must show he has "suffered an 'injury-in-fact'" to a legally protected interest that is both "concrete and particularized" and "actual or

1

imminent," as opposed to "conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). The imminence requirement "ensure[s] that the alleged injury is not too speculative for Article III purposes." *Defenders of Wildlife*, 504 U.S. at 564 n.2. (citation omitted). Plaintiff here fails to meet this standard because his claimed injury is "conjectural," as opposed to "actual or imminent." *Id*. at 561.

In opposition, Plaintiff first argues he that has standing because his injury is actual. Opp. at 16 (referring to injury that is "present now"); *id*. at 1 (asserting that his injuries began with the segregation order and were made essentially permanent by the withdrawal). Plaintiff skirts Federal Defendants' arguments regarding the imminence requirement, Mem. at 11, insisting he is injured *now* because "he has been denied access to validate his claim, by the rescinding of his license to explore," and that his injury "has nothing to do with whether his claims are valid." *Id*. at 15-16.

To the contrary, Plaintiff's claimed injury has everything to do with "whether his claims are valid," *id*., but at present, their validity is simply unknown. Until validity is determined, Plaintiff has suffered no injury. Neither the withdrawal nor any statute or regulation prevents him from taking actions he could have taken before the withdrawal decision – a decision that *preserves* "valid existing rights." Plaintiff's ability to "validate his claim," *id*., is only impaired by the withdrawal decision if he seeks approval of exploratory work during the withdrawal period and the Forest Service, after a final determination of invalidity, denies it. At present, Plaintiff is free to seek approval, s*ee* Dkt, 33-2 ¶¶ 12, 13 (Decl. of Thomas Mutz), but has chosen not to do so.

*Id*. ¶ 12; *see also* Yount Decl. ¶ 13 (noting that Plaintiff withdrew his previously submitted exploration plan). His perceived injury is thus entirely speculative. *See DaimlerChrslyer Corp. v. Cuno*, 547 U.S. 332, 344-45 (2006) (alleged injury is not imminent if based on speculation that officials will take harmful actions).

The fact that Plaintiff's claims would now be subject to a mineral examination if he seeks approval, *see* Opp. at 3, is of no consequence because, as an unpatented mining claim holder, Plaintiff was always subject to the possibility of a mineral examination. *See* Mutz Decl. ¶ 14. He knowingly consented to this possibility, and to the regulatory process generally, when he filed his unpatented mining claims in the first place. His voluntary submission to the regulatory scheme cannot possibly injure him. And until he submits to the authorization process, the decision does not affect him. Thus, it remains uncertain whether he will ever suffer injury as a result of the decision.

Plaintiff's brief only serves to underscore this uncertainty. On the one hand, Plaintiff suggests that a mineral examination would almost certainly lead to invalidation of his mining claims. Opp. at 3 ("Plaintiff's mining claims are in actual and imminent danger of being declared invalid by [the] withdrawal whether or not Plaintiff seeks to further explore his mining claims."); *id*. at 7 (the mining claims are in "actual and imminent danger of being declared invalid"); *id*. at 8 (same). On the other hand, Plaintiff clearly believes there are uranium deposits on his mining claims. Yount Decl. ¶ 6; *see also id*. ¶ 7 (noting, based on electromagnetic imaging, a high probability of the existence of a mineralized breccia pipe in the same area); *id*. ¶ 9 (noting that a "Soil Gas Hydrocarbon (SGH) analysis" indicates the presence of a buried uranium ore body

in the same area); SAC ¶ 8 (alleging "a high degree of certainly [*sic*] that a uranium mineralized breccia pipe exists on these claims." Nonetheless, no one can predict the outcome of a mineral examination, and Plaintiffs' claimed injury is plainly based on speculation that he would receive an adverse decision.[1]

The opposition brief also makes no attempt to address the argument that the SAC fails to allege any detriment to aesthetic or recreational values. *See* Mem. at 12 n.5. "[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 183 (1972) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)). The SAC fails to allege any "lessen[ing]" of such values. Plaintiff does aver, *see* Yount Decl. ¶ 16, that his enjoyment of hiking and camping in the Kaibab Forest is diminished because he is prevented from exploring, but he is free to hike and camp and enjoy the Forest's aesthetic and recreational values, which, if anything, are *enhanced* by the withdrawal and its limitations on mineral development.

---

[1] Plaintiff also argues he has standing because the withdrawal "bars [him] from locating additional adjacent mining claims." Opp. at 2; *see also* Yount Decl. ¶ 17 (asserting that "when the withdrawal is declared unlawful," he "fully intend[s] to return" to the Kaibab Forest and "file claims on new prospects"). The Court should disregard this claim because it has not been pled. It is well established that a plaintiff may not amend his pleadings to set forth unpled claims through a response to a motion to dismiss. *See Boyd v. United States*, No. 10-1252, 2011 WL 31285, at *3 (D. Ariz. 2011) (unpublished); *see also Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 71 (D.D.C. 2007); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). Even if the Court considers it, the vague allegations of future intent to locate mining claims are like the "'some day' intentions" held insufficient to confer standing in *Lujan v. Defenders of Wildlife*, 504 U.S. at 564. They lack the required imminence.

4

Finally, Plaintiff argues he has procedural standing to bring his NEPA claims, but his arguments are unavailing. To establish procedural standing, a plaintiff must, among other things, identify a procedural right accorded by statute and designed to protect the plaintiff's concrete and personal interest. *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 664–65 (D.C. Cir. 1996) (*en banc*); *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1226 (9th Cir. 2008). As explained below and in our opening brief, *see* Mem. at 14, the SAC asserts purely economic injuries, falling outside the "zone of interests" protected by NEPA. As such, Plaintiff fails to identify a procedural right sufficient to establish procedural standing. In fact, Plaintiff contradicts his own claim of procedural standing by acknowledging that a "procedural injury must also assert a concrete interest that is threatened by failure to comply with the procedural requirement." Opp. at 8 (quoting *Cantrell v. City of Long Beach*, 241 F.3d 674, 697 (9th Cir. 2001)). Since *Cantrell*, the Supreme Court has affirmed and restated the principle that a stand-alone procedural right is insufficient to confer standing. [D]eprivation of a procedural right without some concrete interest that is affected by the deprivation – a procedural right *in vacuo* – is insufficient to create Article III standing. *Summers*, 555 U.S. at 496. Moreover, NEPA imposes procedural requirements on agencies; it does not afford citizens procedural rights except, arguably, the right to participate in the NEPA process, which right Plaintiff was afforded here.

**B. Plaintiff's Claims are Unripe**

In opposition, Plaintiff makes no attempt to demonstrate ripeness, and declines to address any authorities on the ripeness doctrine cited in the motion to dismiss. *See*

Mem. at 12-13. By failing to respond, Plaintiff has conceded the argument. *Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co. Inc.*, No. 02-1059, 2004 WL 5376210, at *5 (D. Ariz. 2004) (unpublished) (citing *Pate v. United States*, 277 F. Supp. 2d 1,11 (D.D.C. 2003). In any event, it is well established that the ripeness doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and . . . protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967). Here, the issues are not "fit[] [] for judicial decision," *id.* at 149, because there is no proposal for exploratory work pending and the Forest Service has not begun the process which might lead to a validity determination.

For all these reasons, the Court should dismiss the SAC because it fails to allege facts establishing the existence of a justiciable case or controversy under Article III.

**II. Plaintiff's NEPA Claims Fail to Demonstrate Prudential Standing.**

Even assuming that Plaintiff could establish Article III standing and ripeness, he has not demonstrated that he has prudential standing to bring his NEPA claims. Plaintiff is asserting "purely economic injuries," which are outside the environmental zone of interests protected by NEPA. *See Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934, 939-40 (9th Cir. 2005); *Ranchers Cattlemen v. U.S. Dep't of Agric.,* 415 F.3d 1078, 1103 (9th Cir. 2005)*; Nev. Land Action Ass'n v. U.S. Forest Serv.*, 8 F.3d 713, 716 (9th Cir. 1993). Plaintiff has provided no valid arguments to the contrary.

Plaintiff does not dispute that his alleged injuries are economic. Instead, he

6

attempts to argue that those injuries are "intertwined with" the environment because he intends to mine in an environmentally friendly manner. Opp. at 12. As explained in the opening brief, Mem. at 15, courts have rejected such arguments. The "*manner* in which Plaintiff[] operate[s] his business" does not establish "whether [his] interests also align with the environmental interests protected by NEPA." *See Am. Independence Mines & Minerals Co. v. U.S.D.A.*, 733 F. Supp. 2d 1241, 1251-52 (D. Idaho 2010)(emphasis added) (rejecting plaintiffs' attempt to assert NEPA standing based on argument that they intend to mine "in a fashion that minimizes and/or mitigates and remediates environmental impact"); *see also City of Williams v. Dombeck*, No. 00CV66, 2000 WL 33675559, at *3 (D.D.C. Aug. 17, 2000) (rejecting claims that a plan to "develop a model, environmentally-sustainable, gateway community" creates a cognizable environmental interest under NEPA). Plaintiff has not addressed those cases.

Moreover, although Plaintiff argues that his "environmental concerns" are to insure that his mining activities do not impact the "beauty and environmental integrity of the NAPW areas" and styles his complaint as "an enforcing action," Opp. at 10-11, he actually seeks to overturn a decision that limits mining activities on those areas. Plaintiff asserts that Federal Defendants underestimated the uranium deposits in the withdrawn area thereby *underestimating the economic benefits* of uranium mining, SAC ¶¶ 84-87, ignored studies that would have shown that Defendants were *overestimating environmental impacts* in the EIS, *id.* ¶¶ 89, 100, and failed to adequately consider the "no action" alternative (*i.e.* the alternative which would not have withdrawn any lands from the Mining Law), *id.* ¶¶ 132-143—all in an effort to stop the withdrawal and

7

reopen the lands to the Mining Law. In essence, Plaintiff is claiming that the NEPA analysis was flawed because *more* mining could be conducted on the withdrawn lands—such allegations are not within the zone of interests protected by NEPA. *See Wyoming v. U.S. Dep't of the Interior*, 674 F.3d 1220, 1237 (10th Cir. 2012) (holding that association of snowmobilers who alleged that they "are harmed because [the National Park Service] could have promulgated a rule allowing *more* snowmobiles into Grand Teton without adverse environmental effects" lacked NEPA standing because "NEPA does not protect against such an injury.") (emphasis added). Allowing Plaintiff to assert NEPA claims is more "likely to frustrate than to further [NEPA's] objectives." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 397 n.12 (1987). [2]

      Furthermore, contrary to Plaintiff's assertion, the mere fact that a case relates to the "use of natural resources" does not mean that the economic interests are "tethered to" or "intertwined with" the environment, Opp. at 12. *See Lower Ark. Valley Water Conservancy Dist. v. U.S.*, 578 F. Supp. 2d 1315, 1338 (D. Colo. 2008) ("While I agree that water is part of the physical environment, I disagree that this fact has any relevance given Plaintiff's failure to allege any environmental injuries. . . . Plaintiff's contention

---

[2] Plaintiff's assertions that the "purpose of NEPA" is to "encourage ***productive uses*** of the land in ways that prevent or eliminate damage to the environment," Doc. 44 at 18 (emphasis in original), and that NEPA requires that "alternatives that propose a *use* of the land in question should be available for that use," if the analysis of the alternatives demonstrates "no meaningful environmental impact," *id.* at 9 (emphasis added), ignore over a quarter century of Ninth Circuit case law regarding the purposes behind NEPA. *See Ashley Creek*, 420 F.3d at 943 ("[F]or more than a quarter century, courts have understood the purpose of § 102(2)(C) as protecting the environment."); *Ranchers Cattlemen*, 415 F.3d at 1103 ("NEPA is concerned with harm to the physical environment.").

that injuries based on changes to the physical environment constitute 'environmental injuries' is illogical and inconsistent with case law.").[3]  Plaintiff's reliance on *Ashley Creek* is misplaced.  In *Ashley Creek*, the Ninth Circuit held that a phosphate mining company lacked prudential standing to bring NEPA claims because its interest in selling phosphate was purely economic and outside the zone of interests protected by NEPA. 420 F.3d at 940.  The court expressly disagreed with the Eighth Circuit's reasoning in *Friends of Boundary Waters Wilderness v. Dombeck*, 164 F.3d 1115 (8th Cir. 1999)—a case that Plaintiff also invokes in his brief.  The Ninth Circuit rejected the Eighth Circuit's holding that purely economic interests can confer prudential standing in NEPA § 102 cases because § 102 requires consideration of economic interests in the NEPA analysis.  *Ashley Creek*, 420 F.3d at 942.[4]  The Ninth Circuit held that "in light of the purpose of §102(2)(C)—*protection of the environment*—and the specific statutory requirements for the content of an EIS, we hold that a purely

---

[3] *See also Ashley Creek,* 420 F.3d at 940 (mining company lacked standing when its "sole interest is in selling phosphate"); *Am. Independence Mines*, 733 F. Supp. 2d at 1251-52 (mining company lacked standing when its "admitted interest [is] in mineral resource development"); *Cal. Forestry Ass'n v. Thomas*, 936 F. Supp. 13, 22 (D.D.C. 1996) (timber companies lacked NEPA standing when their interest was to cut timber).

[4] While the Ninth Circuit recognized that *Boundary Waters* could be "persuasively distinguished on . . . factual differences" it "focus[ed] on [its] disagreement with the Eighth Circuit's reasoning." *Ashley Creek*, 420 F.3d at 942.  *Boundary Waters* is also factually distinguishable from Plaintiff's case.  The plaintiffs in *Boundary Waters* were motor boating outfitters who alleged that their motor boating access into the wilderness area was limited as a result of the visitor use restrictions.  *Boundary Waters*, 164 F.3d at 1126.  On the other hand, Plaintiff's access into the withdrawn area to hike, camp and enjoy the beauty of his surroundings has not been limited in any way.  The only thing that has *possibly* been limited (but only if Plaintiff's claims are not valid existing rights, *see* part I, *supra*) is Plaintiff's ability to drill exploratory holes in the ground, which, as explained below, unlike motor boating, is not a recreational activity.

economic injury that is not intertwined with an environmental interest does not fall within § 102's zone of interests." *Id.* at 945 (emphasis added).   This requires Plaintiff to show an environmental *injury* to which his economic injuries are tied.  *See Ranchers Cattlemen*, 415 F.3d at 1103 ("[A] plaintiff must allege injury to the environment; economic injury will not suffice.").  Plaintiff makes no attempt to show environmental harm resulting from the withdrawal.

Likewise, Plaintiff cannot bypass NEPA's prudential standing requirements by call his mining and mineral exploration activities "recreation."  Opp. at 13-14, 19-20. While Plaintiff may enjoy his exploratory activities, he acknowledges that their purpose is economic—*i.e.* to "develop a *paying* mine."  *Id.* at 17 (emphasis added).   The very reason that Plaintiff is allowed to engage in exploratory activities under the Mining Law is to locate and mine "valuable mineral deposits *and not for other purposes*."  *United States v. Coleman*, 390 U.S. 599, 602 (1968) ("Under the mining laws, Congress has made public lands available for people for the purpose of mining valuable mineral deposits and not for other purposes.  The obvious intent was to reward and encourage the discovery of minerals that are valuable *in an economic sense*.") (emphasis added, footnote omitted).  Thus, Plaintiff cannot characterize his interest in mineral exploration and development as "recreational" when the Mining Law authorizes such activities to encourage profitable mineral development—not for recreational purposes.  Plaintiff's asserted injuries to his recreational interests are nothing more than "economic injuries in disguise." *Am. Independence Mines*, 733 F. Supp. 2d at 1266.

Moreover, the withdrawal does not prevent Plaintiff from hiking, camping, or

otherwise enjoying the withdrawn lands. *See* Mem. at 17. While the withdrawal will prevent Plaintiff from conducting mineral operations designed to lead to the discovery of a valuable mineral deposit, which is a prerequisite for the creation of valid existing rights, he has not demonstrated that this impact flows from environmental harm caused by the withdrawal. *See Scott v. United States*, No. CV-08-0138-E-BLW, 2009 WL 482893 at *5 (D. Idaho Feb. 24, 2009) (finding that plaintiff heli-skiing outfitter lacked standing because "[a]lthough the complaint alleges heli-skiing 'is a form of winter recreation,' it does not allege that [plaintiff] seeks to protect the environment by challenging the closure order or that his heli-skiing will be impacted by environmental harm."). Indeed, that some impairment to the environment would result from exploratory drilling, and ultimately, from an operational mine, is fatal to his prudential standing claim since NEPA does not protect "recreational" interests damaging to the environment. *See Nev. Land Action Assoc.*, 8 F.3d at 716 (plaintiff "cannot invoke NEPA to prevent 'lifestyle loss' when the lifestyle in question is damaging to the environment"); *Am. Independence Mines*, 733 F. Supp. 2d at 1251 (mining companies lacked NEPA standing when their alleged injury, "[c]ontrary to NEPA's environmental purpose[,] would degrade the environment, not protect the environment.").[5]

In sum, the Court should dismiss all of Plaintiff's NEPA claims because Plaintiff has not established prudential standing.

---

[5] *See also Cal. Forestry Ass'n,* 936 F. Supp. at 22 (timber companies lack NEPA standing because their "ultimate interest" is to maximize the number of trees harvested which "is not 'systematically aligned' with NEPA's purpose, to 'prevent or eliminate damage to the environment.'") (quoting 42 U.S.C. § 4321).

**CONCLUSION**

For the foregoing reasons and those set forth in Federal Defendants' opening brief, Federal Defendants respectfully request that the Court dismiss the SAC for lack of a justiciable case or controversy, or, in the alternative, dismiss all NEPA claims for lack of prudential standing.

Dated: June 25, 2012

                                  Respectfully Submitted,

                                  IGNACIA S. MORENO,
                                  Assistant Attorney General
                                  Environment and Natural Resources Division

                                  /s/ John S. Most
                                  JOHN S. MOST, Trial Attorney
                                  Virginia Bar, No. 27176
                                  DOMINIKA TARCZYNSKA, Trial Attorney
                                  New York Bar, No. 4431573
                                  Natural Resources Section
                                  P.O. Box 7611
                                  Washington, D.C. 20044
                                  (202) 305-0447(Tarczynska)
                                  202-616-3353 (Most)
                                  202-305-0506 (fax)
                                  Dominika.Tarczysnka@usdoj.gov
                                  John.Most@usdoj.gov

                                  *Counsel for Federal Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that I have caused the foregoing to be served upon counsel of record through the Court's electronic service system (ECF/CM) and by first class mail on this date to Gregory Yount at the following address: 807 West Butterfield Road, Chino Valley, Arizona 86323.

Dated:  June 25, 2012

      */s/* John S. Most
JOHN S. MOST
Natural Resources Section
P.O. Box 7611
Washington D.C. 20044-0663

*Counsel for Federal Defendants*

13