DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 EAST BROADWAY BLVD., SUITE 200
TUCSON, AZ 85716-5300
(520) 322-5000

John C. Lacy (AZ # 2084)
jlacy@dmyl.com
Gary F. Urman (AZ # 11748)
gurman@dmyl.com
Marian C. LaLonde (AZ #25132
mlalonde@dmyl.com
Attorneys for Intervenor VANE Minerals (US), LLC

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| GREGORY YOUNT,<br><br>                        Plaintiff,<br><br>vs.<br><br>KENNETH L. SALAZAR, Secretary, Department of the Interior, *et al.*,<br><br>                        Defendants. | NO. CV11-8171-PCT-DGC<br>(Consolidated)<br><br>**OPPOSITION BY VANE MINERALS TO DEFENDANTS' MOTION TO DISMISS** |

Plaintiff VANE Minerals (US), LLC ("VANE"), by and through its counsel undersigned, respectfully submits this response and opposition to the Motion to Dismiss filed by the federal Defendants. In connection with this Opposition Memorandum, VANE incorporates herein by reference the arguments set out in the Opposition to Motion to Dismiss submitted by Plaintiff Northwest Mining Association (Document No. 47), the Opposition to Motion to Dismiss submitted by Plaintiffs National Mining Association and Nuclear Energy Institute (Document No. 60) and the Opposition to Motion to Dismiss submitted by Plaintiff Quaterra Alaska, Inc. (Document No. 72).

**Background.**

VANE is a Delaware limited liability company that is authorized to do business in the State of Arizona, where it owns, explores and develops mineral properties. Until 2009, when the Secretary of the Interior issued a segregation order that ultimately resulted in this litigation, VANE was actively engaged in an exploration and development program designed to locate, delineate, and develop high-grade breccia pipe uranium deposits in Northern Arizona. Since October, 2004, VANE has invested more than $8.5 million in its uranium program.

VANE is committed to following mining practices that comply with all applicable laws and all restrictions and conditions imposed by governmental entities, and which result in as little impact to the land and environment as possible. Declaration of Kris Hefton dated October 11, 2012 (the "Hefton Declaration"), paragraph 5. VANE recognizes that irresponsible activities on public lands often result in adverse political, regulatory and financial consequences, so VANE willingly and routinely incurs expenses to minimize the impact of its activities upon the environment. *Id.* VANE takes pride in leaving behind little or no lasting environmental disturbances, so that the lands can be better enjoyed by other users. *Id.* For example, sites in the Kaibab National Forest where VANE conducted exploratory drilling in 2008 were fully reclaimed under the supervision of the Forest Service so that, today, it is difficult, if not impossible, to tell that any mineral exploration activities were conducted on the sites. *Id.*

VANE owns 678 mining claims in Northern Arizona. These claims were properly located and maintained in compliance with all applicable provisions of federal, state and local law. Hefton Declaration, paragraph¶ 6.

On July 21, 2009, notice was published in the *Federal Register* of Interior Secretary Salazar's proposal to withdraw approximately 1 million acres in Northern Arizona from

location and entry under the Mining Law for 20 years. 74 Fed. Reg. 35,887–88 (July 21, 2009). Publication of this notice automatically segregated these acres from location and entry under the Mining Law for two years. The lands that were segregated included 626,678 acres of land managed by the Bureau of Land Management ("BLM"), and located within the "Arizona Strip" portion of Northern Arizona, as well as 355,874 acres of land managed by the United States Forest Service, and located within the Tusayan Ranger District of the Kaibab National Forest. The segregated lands collectively are referred to as the "Withdrawal Area." Public Land Order 7787, which is the subject of this action, ultimately closed the lands in the Withdrawal Area to mining and mineral exploration for twenty years. All of VANE's mining claims are located within the Withdrawal Area.

**VANE Has Standing To Pursue Its Claims.**

The parties appear to be in agreement that standing exists when a plaintiff demonstrates (1) an "injury in fact;" (2) that is "fairly traceable" to the actions of the defendant; and (3) is likely to be addressed by a favorable decision. *Bennett v. Spear,* 520 U.S. 154, 162 (1997); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). Each of these criteria exists with respect to VANE's claims.

First, VANE has suffered an injury in fact. Immediately prior to the segregation, VANE was ready, willing, and able to explore for and locate new mining claims in the Withdrawal Area. Because of the segregation, and subsequently the withdrawal, VANE's mineral exploration program in Northern Arizona, in which VANE has invested more than 8.5 Million Dollars, has been frozen. VANE now is barred from exploring for and locating any new claims.

More specifically, up to the time that the Secretary of the Interior issued his notice of segregation applicable to the Withdrawal Area, VANE was continually identifying targets for locating new claims using ground and air reconnaissance, among other strategies.

Hefton Declaration, paragraph 9. But for the notice of segregation, and later the withdrawal order, VANE would have continued to locate claims in the Withdrawal Area. To this day, VANE maintains a list of targets that are ready for "staking," which no longer may be located as mining claims. This fact, standing alone, is sufficient to demonstrate justifiable harm.[1]

In addition, before the segregation, VANE could obtain approval to explore its claims, through exploratory drilling, in order to determine whether the claims contain mineral concentrations that are sufficiently promising to justify the expense of mining. However, on segregated lands, both the BLM and the Forest Service have announced that they now will conduct mineral examinations to confirm the existence of valid claims before any exploratory operations may proceed. *See* 43 C.F.R. § 3809.100.

At the time of the notice of segregation, VANE had submitted plans of operations to the United States Forest Service to conduct exploratory drilling on claims located by VANE within the Kaibab National Forest. When the notice of segregation was issued, the Forest Service notified VANE that, as a result of the segregation, no action could be taken on the pending plans of operations until the Forest Service conducted a mineral examination of each affected claim to determine the existence of "valid existing rights." Hefton Declaration, paragraph 11.

The Forest Service took the position that VANE was required to demonstrate a "discovery" of minerals in such concentrations and quantities that it would be commercially reasonable to begin mining within each claim subject to the pending plans of operations. Hefton Declaration, paragraph 12. If VANE could make such a showing for a claim, using

---

[1] The Federal Defendants seek to minimize the prohibition against locating new claims by suggesting that VANE had nothing more than "someday intensions" that are too vague to constitute harm. However, the record demonstrates otherwise. VANE was ready, willing and able to locate new claims, but for the withdrawal, and had prepared a list of targets for "staking." Hefton Declaration, paragraphs 8 and 9. There was nothing "someday" in VANE's intentions.

Opposition by VANE Minerals to Defendants' Motion to Dismiss

4

data that existed on the date of the notice of segregation, then consideration of the plans of operations would be permitted to proceed. On the other hand, if such a showing could not be made for a particular claim, then the entire claim would be invalidated by the Forest Service. *Id.*

The problem with the impending mineral examinations is that extensive drilling and other exploratory activities are required to demonstrate the existence of a "discovery," as defined by the Forest Service. Hefton Declaration, paragraph 13. VANE did not possess the data demanded by the Forest Service because it had not conducted the necessary drilling and other exploratory activities; in other words, the pending plans of operations sought approval to conduct the very activities that were necessary to gather the data which would be needed before the activities would be approved. *Id.*

Knowing that VANE previously did not have the opportunity to conduct necessary drilling and other exploration activities on the claims that were subject to its plans of operations, the Forest Service suggested that VANE withdraw its plans of operations. Hefton Declaration, paragraph 14. The alternative, VANE was told, would be mineral examinations and the potential invalidation of its claims. *Id.* Faced with no real choice, VANE withdrew its plans of operations. *Id.*

Had the segregation, and later the withdrawal, not been in effect, the Forest Service would not have required mineral examinations as a condition of approving VANE's plans of operations. Hefton Declaration, paragraph 15.

As explained by Secretary Salazar in his ROD, the preparation of a single mineral examination report "is a complex and time-consuming" process:

> On withdrawn lands, neither the BLM nor the USFS will process a new notice or plan of operations until the surface managing agency conducts a mineral examination and determines that the mining claims on which the surface disturbance would occur were valid as of the date the lands were segregated

Opposition by VANE Minerals to Defendants' Motion to Dismiss

5

I:\FILES\DOCS\VANE04\120350\PLDG\N18914.DOCX

>or withdrawn.  Determining the validity of a mining claim *is a complex and time-consuming* legal, geological, and economic evaluation that is done on a claim-by-claim basis.

ROD at 6–7 (emphasis added).  Moreover, the BLM announced that the cost of mineral examinations performed during the segregation and withdrawal will be charged to the holder of the claim.  *See* 43 C.F.R. § 3800.5 (b).  In the absence of a segregation or withdrawal, the BLM would have paid the cost of the mineral examinations.  Thus, because of the 20-year withdrawal, VANE is effectively limited to engaging in only casual use on its existing claims, unless it wishes to engage in an expensive and time-consuming validity examination.  As a result, the value of VANE's mining claims has significantly decreased.  Moreover, VANE must pay annual fees to maintain its claims, even though it is effectively barred from developing them.  All of these factors constitute discreet and identifiable harm that flows from the withdrawal decision.

Second, VANE's injury is fairly traceable to the actions of the Federal Defendants.  The inability to locate additional mining claims arises directly from the withdrawal (which was ordered without legal or factual basis in violation of FLPMA), and the withdrawal, in turn, purportedly was justified by an environmental impact statement that was prepared in a manner that violated various requirements of NEPA.  Moreover, a requirement of a mineral examination before any exploratory drilling may occur, as imposed by the BLM and the Forest Service, likewise is traceable to the withdrawal.  Prior to the withdrawal, a proposed plan of operations or notice of intent to proceed with exploration would not have triggered a mineral examination.

Finally, VANE's injury can and will be redressed by a favorable ruling in this case.  With an order invalidating the withdrawal (the relief requested by Plaintiffs in this action), VANE and the other Plaintiffs will be free to locate additional claims, and restrictions against exploratory drilling before a costly, time-consuming and potentially disastrous

Opposition by VANE Minerals to Defendants' Motion to Dismiss

6

I:\FILES\DOCS\VANE04\120350\PLDG\N18914.DOCX

mineral examination will be lifted.

The Federal Defendants suggest that VANE has not suffered any harm until it actively seeks to explore its claims, noting that VANE presently has no plans of operations on file. As noted, however, VANE has no current plans of operations on file specifically because the withdrawal triggered a requirement for costly and time-consuming mineral examinations which, without the prior opportunity for exploration operations, many of VANE's claims presently are not in a position to pass. In short, the Federal Defendants have "stacked the deck" by using the threat of mineral examinations to coerce the withdrawal of existing plans of operations, and to chill any thoughts of submitting new plans of operations, and thereby benefit from a claim that there are no existing plans of operations. Viewed from any angle, the withdrawal has effectively frozen mineral exploration within the Withdrawal Area, and any suggestion that VANE and the other Plaintiffs have not been harmed is just plain wrong.

Because the necessary conditions for standing exist, the Motion to Dismiss should be denied.

**The Action Is Ripe.**

The parties likewise are in agreement that a dispute is ripe for judicial review when an administrative decision has been formalized and its effects are felt in a concrete way by the challenging parties. *Abbot Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967). In the present case, a final and formal decision has been rendered by the Secretary of the Interior concerning the Northern Arizona Withdrawal. The decision is a final decision. There are no hearings left to be conducted, no more facts being gathered by the administrative agency, and no more administrative proceedings left to be conducted in connection with the Secretary's Public Land Order. Moreover, as has been demonstrated, the Secretary's decision is being felt by VANE and the other plaintiffs in a concrete way.

VANE is precluded from locating new mining claims, and VANE is unable to conduct exploratory drilling on its existing claims on the same terms as were available before the withdrawal.

The Federal Defendants argue that there still remains the task of determining the validity of VANE's 678 claims and, until these factual determinations are made, this action is not ripe. However, as other Plaintiffs have observed, this action does not involve the validity of VANE's claims. Rather, the action involves the validity of the Northern Arizona Withdrawal. Conducting mineral examinations, and determining the validity of each of VANE's 678 mining claims, will provide no meaningful contribution to the factual record underlying the Secretary's ill-conceived withdrawal order. Rather, the prospect of mineral examinations will contribute years of lost time, incalculable expense to VANE, and no avenue for judicial redress. These hardships clearly outweigh any benefit that possibly could be achieved by delaying this judicial review.

Because the dispute is ripe for determination by the Court, the Motion to Dismiss should be denied.

**VANE Has Prudential Standing To Raise Its NEPA Claims.**

The Federal Defendants allege that VANE's interests are solely economic in nature and, therefore, VANE does not have prudential standing to challenge agency action under NEPA pursuant to *Ashley Creek Phosphate Co. v. Norton.* 420 F.3d 934 (9th Cir. 2005). This argument fails because the record reflects that VANE's interests are not purely economic. VANE does not deny that it has an economic interest, but its interests are broader than that of the Company discussed in *Ashley Creek.* Rather, VANE's economic interests are securely intertwined and tethered to an interest in the physical and natural environment which meets the standing requirements of NEPA.

Opposition by VANE Minerals to Defendants' Motion to Dismiss

I:\FILES\DOCS\VANE04\120350\PLDG\N18914.DOCX

Because NEPA suits are reviewed under the Administrative Procedures Act, a plaintiff alleging a NEPA claim must assert an interest that is with the "zone of interests" protected under NEPA in order to demonstrate standing. *Western Radio Services Co., Inc. v. Espy*, 79 F.3d 896, 901, (9th Cir. 1996) citing *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 375-76 (1989) and *Nevada Land Action Ass'n v. United States Forest Service*, 8 F. 3d 713, 715-16 (9th Cir. 1993). VANE meets and exceeds the requirements of the zone of interests test to bring a claim under NEPA because its interests are interrelated to issues concerning environmental impact. *Id.*

However, in *Clarke v. Securities Industry Ass'n*, 479 U.S. 388, 107 S.Ct. 750 (1987), the Supreme Court recognized an exception to the "zone of interests" test. The Court stated that "In cases where the plaintiff's interest *is not itself the subject of the contested regulatory action*, the [zone of interest] test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statue that it cannot reasonably be assumed that Congress intended to permit the suit. The test is not meant to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff." 479 U.S. at 399-401, 757, citing *Investment Company Institute v. Camp*, 401 U.S. 617, 91 S.Ct. 1091 (1971)(emphasis added); *See also Match-E-Be-Nash-She-Wish Band of Pottowatomi Indians v. Patchak,* 132 S.Ct. 2199, 2210-11 (2012). In other words, if administrative action is directed at a party, that party has standing to challenge the action without demonstrating an interest within a particular zone of interests. As has been noted by other Plaintiffs, the Northern Arizona Withdrawal by its terms was specifically directed at uranium mining and mineral exploration within the Withdrawal Area. As such, VANE and the other Plaintiffs who were the object of the regulatory action are exempt from any "zone of interests" requirement for prudential standing. In any event, however, VANE's interests not only are the subject of

Opposition by VANE Minerals to Defendants' Motion to Dismiss

the agency action, but also are related to the purposes implicit in NEPA, which include protection of the environment and environmental impact.

Turning back to the Federal Defendant's reliance in *Ashley Creek*, the Court only discussed § 102 of NEPA as a secondary matter after it already concluded that the plaintiff there lacked constitutional standing. The Court discussed prudential standing requirements as they related to the plaintiff and held that more than a purely economic injury is required for standing, and the injury must be intertwined with an environmental interest to fall within NEPA's zone of interest. *Id*. at 945. Although VANE questions whether §102 of NEPA can be construed so narrowly to allow only those with an environmental interest to raise a claim, for purposes of this case, VANE meets even this narrow interpretation of standing. For example, VANE notes that uranium mining within the Withdrawal Area will benefit the environment by removing uranium from the land. VANE, in its comments to the Draft Environmental Impact Statement ("DEIS") dated April 30, 2011, stated, "Nowhere in the DEIS does it state that the direct positive impact of mining uranium from breccia pipes is that it removes the uranium that is the source of the concern in the first place." *See* Hefton Declaration, paragraph 16, Exhibit A, Page 5.[2] In addition, VANE is committed to limiting the impact to the environment as a result of its activities and willingly and routinely incurs expenses to minimize environmental impacts. VANE values and pursues a practice of leaving the land in a state such that it can be better enjoyed and used by others. *See* Hefton Declaration paragraph 5. If protection of the environment is the overreaching goal of NEPA, then VANE's interest in removing exposed uranium in breccia pipes and its observations (which were disregarded by the BLM) that the failure to remove the uranium will impact the environment, are legitimate interests within NEPA's zone of interests.

---

[2] VANE's comment to the DEIS that uranium mining would actually improve the environment was wholly disregarded by the BLM, in violation of NEPA. This fact, standing alone, is sufficient to constitute procedural harm that justifies Article 3 standing, as well as prudential standing.

Opposition by VANE Minerals to Defendants' Motion to Dismiss

10

I:\FILES\DOCS\VANE04\120350\PLDG\N18914.DOCX

1 Moreover, VANE recognizes that, in today's regulatory environment, "clean" mining and
2 mineral exploration is good business. In this regard, environmental interests and economic
3 interests are inextricably intertwined. VANE's interests are not solely economic, as they
4 include and are intertwined with a concern for the welfare and preservation of the human
5 and natural environment, all as contemplated by *Ashley Creek*.

6 Finally, pursuant to 40 CFR § 1508.14 (the regulation that that governs preparation
7 of an EIS) the *Ashley Creek* Court opined that the regulation requires that when an EIS is
8 prepared and economic or social and natural or physical environmental effects are
9 interrelated, then the environmental statement will discuss all of these effects on the human
10 environment. *Id*. at 944. By failing to consider all of the possible natural and physical
11 effects on the human environment, the EIS is flawed and VANE has a valid NEPA claim
12 that encompasses not only economic interests, but also interests in the human and natural
13 environment. VANE raised legitimate flaws in the EIS process where evaluators failed to
14 consider all natural and physical environmental effects as required by § 102 and 40 CFR §
15 1508.14. VANE's interests are clearly within the zone of interests protected under NEPA
16 and are interrelated to the natural and physical environment. Therefore, VANE has
17 prudential standing to bring a NEPA claim.

18 For the foregoing reasons, VANE respectfully requests that the Federal Defendants'
19 Motion To Dismiss be denied.

20 DATED this 17th day of October 2012.

21 DECONCINI MCDONALD YETWIN & LACY, P.C.

22
23 By: */s/ Gary F. Urman*
      John C. Lacy
      Gary F. Urman
24    Marian C. LaLonde
      2525 E. Broadway Blvd., Suite 200
25    Tucson, AZ 85716-5300
      Attorneys for Plaintiff
26

Opposition by VANE Minerals to Defendants' Motion to Dismiss

11

I:\FILES\DOCS\VANE04\120350\PLDG\N18914.DOCX

CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of October, 2012, I caused the foregoing Opposition to Defendants' Motion to Dismiss to be served upon counsel of record through the Court's electronic service system (ECF/CM) and upon Gregory Yount by first class mail to the following address: 807 West Butterfield Road, Chino Valley, Arizona 86323.

By:  */s/ L.J. Andersen*