1   Gregory Yount
    807 W. Butterfield Rd
2   Chino Valley, Arizona 86323
    928-899-7029
3   *Plaintiff Pro Se*

FILED _____ LODGED
RECEIVED _____ COPY

MAY 0 3 2013

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

4

5   **IN THE UNITED STATES DISTRICT COURT**

6   **FOR THE DISTRICT OF ARIZONA**

    **PRESCOTT DIVISION**

7

8   GREGORY YOUNT
                    Plaintiff,              Case No.  3:11-cv-08171-PCT DGC

9       v.                                  (Lead Case)

10  KEN SALAZAR, Secretary of the Interior; et al.;

11                  Defendant

12  National Mining Association, et al.;     Case No. 3:11-cv-08038-PCT-DGC
                    Plaintiff,

13      v.

14  KEN SALAZAR, Secretary of the Interior; et al.;

15                  Defendant

16  Northwest Mining Association,           Case No. 3:12-cv-08042-PCT-DGC
                    Plaintiff,

17      v.

18  KEN SALAZAR, Secretary of the Interior; et al.;
                    Defendant

19  Quaterra Alaska Incorporated, et al.,   Case No. 3:12-cv-08075-PCT-DGC
                    Plaintiff,

20

21      v.

22  KEN SALAZAR, Secretary of the Interior; et al.;

                    Defendant

1   Defendant's Record of Decision (ROD) 77 Fed Reg. 2563-01 (Jan. 18, 2012) and Public

2   Land Order (PLO) dated January 21, 2012 both state that they are subject to valid existing rights.

3   This means that the withdrawal is subordinate to the determination of valid existing rights for

4   mining claims that pre-date the withdrawal. Valid existing rights are determined by a mineral

5   examination conducted by the Defendant.

6   Therefore, the Defendant's withdrawal as stated in the ROD and Public Land Order is

7   subordinate to the future determination of valid existing rights via mineral exams to be

8   conducted by the Defendant. It is a requirement of the Defendant's own ROD.  The Defendant

9   has the discretion to conduct mineral examinations at any time for any of the mining claims in

10   the withdrawal area.[1] That the Defendant chooses to wait until a claimant submits a Plan of

11   Operation to initiate a mineral exam is, in itself, an exercise of discretion. When the Defendant's

12   ROD was issued, there were 3156 mining claims to which the withdrawal was subordinate. Until

13   the validity of these mining claims are determined through a mineral exam, the withdrawal

14   process is not complete.

15   This is a substantial future Federal action remaining as a result of the Defendant's ROD

16   and Public Land Order. The Defendants own ROD acknowledges on page 7 of the ROD that

17   mineral exams are a "complex and time consuming legal, geological, and economic evaluation."

18   Therefore, the determination of valid existing rights and mineral exams are not merely a

19   ministerial action as claimed by the Defendant, but are a remaining federal action to come, that

20   follow from the Defendant's withdrawal (Major Federal Action subject to NEPA).

21

22   _____
[1] "The Forest Service is authorized, by Forest Service Manual (FSM) 2814.11, to examine unpatented mining claims, or to initiate contest proceedings, at any time" (Declaration of Thomas Mutz, Defendant's Exhibit 2, ¶ 14).

1    Defendant's theory that the withdrawal's January 21, 2012 effective date marks the end of

2    all Federal *actions* and that "Interior's decision-making process had been consummated and its

3    decision had taken full legal effect" is wrong. The Defendant's own ROD defines the remaining

4    Federal actions as the validity exams and subordinates the withdrawal to the determination of

5    valid existing rights and mineral exams. The final and full weight of the agency's actions will not

6    be felt until the mineral exams for all pre-withdrawal mining claims are concluded, even though

7    the Agency's *decision making process* for the withdrawal has been completed.

8    The Defendant's ROD is the final agency action regarding the decision making process

9    for the withdrawal, but this decision is followed by the further Federal action for the

10   determination of valid existing rights. The Defendant confuses the difference between the

11   consummation of an agency's final decision making process and whether all agency actions that

12   follow from that decision (requiring an EIS) are completed.

13   It is clear that the Defendant's ROD and Public Land Order immediately halts the location

14   of all new mining claims in the withdrawal area, but it is equally clear that the mining claims

15   predating the withdrawal have additional federal actions remaining to be done.

16   The Defendant's reliance on *Center for Biological Diversity*, 706 F.2d at 1095 (additional

17   independent actions taken by the BLM after its approval of the mining plan of operations did not

18   trigger NEPA supplementation of the BLM's approval of that plan) is misplaced. The

19   Environmental Assessment (EA) for the Arizona 1 Mine and subsequent Decision Record (DR)

20   for the AZ1 Mining Plan of Operation (MPO) did not subject or subordinate itself to future

21   actions required by the DR itself.  The determination of valid existing rights through mineral

22

-2-

1   exams is not an additional independent action, but one that is an intergral part of the Defendant's

2   ROD and PLO.

3           The Defendant likens the withdrawal action to the land use plan in *Norton v. S. Utah*

4   *Wilderness Alliance.* The Northern Arizona Withdrawal is not a land use plan. The land use plan

5   considered in *Norton v. S. Utah Wilderness Alliance "*is generally a statement of priorities; it

6   guides and constrains actions, but does not (at least in the usual case) prescribe them." In

7   contrast, the Defendant's ROD and PLO prescribes the withdrawal of the land from the Mining

8   Law and specifically subjects and subordinates itself to the existence of valid existing rights.

9           Quoting from *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 73

10          (2004) ("*SUWA*"),

11                  "As we noted in *Marsh,* supplementation is necessary only if "there

12          remains `major Federal actio[n]' to occur," as that term is used in § 4332(2)(C).

            *Id.,* at 374. In *Marsh,* that condition was met: the dam construction project that

13          gave rise to environmental review was not yet completed. Here, by contrast,

14          although the "*[a]pproval* of a [land use plan]" is a "major Federal action"

15          requiring an EIS, 43 CFR § 1601.0-6 (2003) (emphasis added), that action is

16          completed when the plan is approved. The land use plan is the "proposed

            action" contemplated by the regulation. There is no ongoing "major Federal

17          action" that could require supplementation..."

18          The withdrawal as specified by the Defendant's ROD of the land in the Northern Arizona

19  Withdrawal was the major federal action requiring an EIS under NEPA. The withdrawal process

20  as considered in the Defendant's ROD is not complete until the determination of valid existing

21  rights for mining claims predating the withdrawal are complete. The determination of valid

22  existing rights for over 3000 mining claims would require a major federal effort and even so

1   would likely take many years to complete. Therefore, the Defendant's ROD and PLO are

2   essentially the same as a dam construction project considered in *Marsh* above and not like a land

3   use plan as implied by the Defendant. This is especially true given that the land use plan

4   described in *Norton v. S. Utah Wilderness Alliance* is a guide to priorities, but the Defendant's

5   withdrawal prescribes and defines specific required future actions.

6          Defendant wrongly characterizes their lawful responsibilities if the determination of valid

7   existing rights from the conduct of mineral exams is determined to be a remaining Federal action.

8   From page 7 Defendant's response (Dkt 137):

9          "Finally, even assuming a mineral examination could be characterized as

10         remaining major federal action, Plaintiff's argument nonetheless fails.

11         None of the counts currently before the Court allege that BLM conducted

           mineral examination without first conducting the requisite supplemental

12         analysis under Section 1502.9(c)(1)(ii). BLM is required to compile an

13         administrative record only for *the challenged* agency action – in this case,

14         the January 9, 2012 withdrawal decision. That a plaintiff may decide to

           challenge a mineral examination in the future has no bearing on the scope

15         of the administrative record for the claims currently before this Court."

16

17         Assuming that the Court fins that there are Federal actions remaining as a result of the

18   Defendant's withdrawal, the BLM has lawful obligations under NEPA to analyze the new

19   information submitted by the Plaintiff regardless of whether they are a defendant in litigation.

20   The requirement for the Defendant to analyze the new information flows from Section 1502.9(c)

21   (1)(ii) itself as applied to the Northern Arizona Withdrawal EIS and not from whether this or any

22   other Plaintiff has a count specific to this issue before this court.

-4-

1    Defendant's Council also advised the Plaintiff "that the email did not constitute "new

2    circumstances or information," within the meaning of the NEPA regulation at 40 C.F.R. §

3    1502.9(c)(1)(ii), and thus did not require BLM to re-open its NEPA analysis or reexamine its

4    fully-executed decision. *Id*. At 3."

5    The Defendant has offered no analysis that the information provided by the Plaintiff is

6    incorrect. The Defendant merely states that the information need not be considered because it

7    post dates the ROD and that the Defendant claims that there are no remaining Federal actions

8    resulting from the withdrawal that would obligate them to consider the information submitted

9    under § 1502.9(c)(1)(ii).

10    To the extent that Defendant's Council's advisement to Plaintiff might be construed as a

11    definitive statement that Plaintiff's emails did not constitute "significant new circumstances or

12    information" resulting from some analysis performed by the Defendant, the Plaintiff begs the

13    Court to compel the Defendant to produce such analysis if the Court's decision on this motion

14    turns on this issue.

15    Plaintiff acknowledges that should the Court find that the determination of valid existing

16    rights through the conduct of mineral exams constitutes further federal actions remaining, then

17    as a result, the Defendant is obligated under 40 C.F.R. § 1502.9(c)(1)(ii) to analyze the

18    information provided by the Plaintiff. The Plaintiff made good faith effort not to sandbag the

19    Defendant during litigation with this information that shows that the BLM was negligent in the

20    analysis of the uranium endowment for the Northern Arizona Withdrawal area.

21    However, the motion at hand is whether the Administrative Record should be

22    supplemented with Plaintiff's emails regarding the new information provided to the BLM. Any

1   further analyses by the Defendant of this information flows independently from the obligations

2   and requirements of § 1502.9(c)(1)(ii) and such analyses would then naturally be required in the

3   administrative record.

4           Defendant brings forth the issue that Plaintiff motion may be construed as seeking extra-

5   record review of new information. While this could result from a favorable decision, the motion

6   at hand is a narrow question of whether the determination of valid existing rights as required by

7   the Defendant's own ROD is further Federal actions remaining. The consequences of such a

8   decision should follow as a matter of law without any further direction from the Court.

9           However, if the Plaintiff's motion were indeed interpreted as seeking extra-record review,

10  there is sufficient information in the proffered emails to support a claim of Agency bad faith.

11          Plaintiff writes in the email dated February 15, 2013: "The DOI should
            reconsider supplementation as well based on CEQ 1502.9 (c) (ii) 2.
12
            "May also prepare supplements when the agency determines that the purpose
13          of the Act will be furthered by doing so."

14          That the DOI now knows (or should know) with certainty that the uranium
            resource estimate for the withdrawal area is fatally flawed in all respects and is
15
            without any foundation in science, math, or logic and underestimates the
16          Uranium resource by over 600%, seems to me to, meet the criteria of CEQ

17          1502.9 (c) (ii) 2.

18                 How can the DOI claim any credibility at all when they know of a
            major flaw in the EIS, that is the starting point of all analysis for the EIS, and
19          yet ignore it? Credibility is what section 1502.9 (c) (ii) 2 is speaking to. The

20          DOI should listen."

21          On March 3, 2013, Plaintiff wrote, in part, in an email given wide distribution at the

22  BLM the following:

1

2          "However, it should be abundantly clear that there was a
          MAJOR institutional failure at the BLM/DOI with regards to the endowment
3          resource. ....This commentary and analysis is being given a wide distribution
          to those that participated in reviewing the RFD and Appendix B It is my
4          hope that there are those who would really look at what I have presented, do
          their own research, and do the right thing."
5

6          Plaintiff is clearly calling out the BLM on their unwillingness to address the massive

7   failure for determining the uranium endowment for the Northern Arizona Withdrawal EIS. The

8   uranium endowment is the foundation of the EIS itself. Plaintiff clearly pleads with the BLM to

9   do the right thing which implies that their behaviors and actions are "the wrong thing" and thus

10  acting in bad faith. This is especially true when considering 40 C.F.R. § 1502.9(c)(2) " May also

11  prepare supplements when the agency determines that the purpose of the Act will be furthered by

12  doing so."

13

14          From *National Audubon Soc. v. US Forest Service, 46 F. 3d 1437 - Court of Appeals, 9th
    Circuit 1993:*

15

16          the district court may extend its review beyond the administrative record and permit the

17  introduction of new evidence in NEPA cases where the plaintiff alleges "that an EIS has

18  neglected to mention a serious environmental consequence, failed adequately to discuss some

19  reasonable alternative, *or otherwise swept stubborn problems or serious criticism under the
    rug*." Emphasis added.

20

21

22

1    It is hard to imagine a more serious problem and criticism than that the foundational

2    premise for the Defendant's entire EIS is negligently wrong and was based upon a single

3    unsupported citation.

4

5        The fact that the Defendant is hiding behind the premise that the ROD is the final agency

     action, and that no other Federal action remain to be done, to ignore and leave unanalyzed

6    information that shows that the BLM was scientifically incompetent to determine the uranium

7    endowment of the withdrawal area, ***breaks faith with NEPA itself***.  NEPA is a procedure statute

8    that is premised on providing the decision maker with the scientific truth. The Defendant, by

9    their actions, is not interested in the truth, and so is acting in bad faith.

10       Thus, if Plaintiff's Motion to Supplement the Administrative Record were interpreted as

11   seeking extra-record review, the Motion should be granted on the grounds that the Defendant

12   acted in bad faith to avoid the detrimental fallout that would follow should the Plaintiff's new

13   information be analyzed and found to be correct.

14       Plaintiff's motion should be granted should the Court find that the determination of valid

15   existing rights for the thousands of remaining mining claims are further federal actions

16   remaining.

17       Dated: May 2, 2013                    Respectfully Submitted,

18

19                                             Gregory Young, Pro se
                                               807 W. Butterfield Rd
20                                             Chino Valley, Az 86323
                                               928-899-7029
21

22

## CERTIFICATE OF SERVICE

I hereby certify that I have caused the foregoing to be served upon counsel of record by first class mail to:

Edward B. Zukoski

Melanie R. Kay (*pro hac vice*)

Edward B. Zukoski (*pro hac vice*)

Earthjustice

1400 Glenarm Place, Suite 300

Denver, CO 80202

Attorney for Defendant-Intervenors

Grand Canyon Trust, et al.


JOHN S. MOST, VA Bar No. 27176

Natural Resources Section

P.O. Box 7611

Washington, D.C. 20044-7611

Counsel for Defendants


R. Timothy McCrum (*pro hac vice*; DC Bar No. 389061)

J. Michael Klise (*pro hac vice*; DC Bar No. 412420)

Thomas R. Lundquist (*pro hac vice*; DC Bar No. 968123)

CROWELL & MORING LLP

1001 Pennsylvania Ave., N.W.

Washington, D.C. 20004-2595

Attorneys for Plaintiff National Mining Association

3

1   Susan M. Mathiascheck (*pro hac vice*; DC Bar No. 426764)

2   John C. Martin (*pro hac vice*; DC Bar No. 358679)

3   Amy B. Chasanov (*pro hac vice*; D.C. Bar No. 468779)

4   CROWELL & MORING LLP

    1001 Pennsylvania Avenue, N.W.

5   Washington, D.C. 20004-2595

6   Attorneys for Plaintiff Nuclear Energy Institute

7

8   Constance E. Brooks

    (*pro hac vice* Colo. Bar. No. 18258)

9   C. E. BROOKS & ASSOCIATES, P.C.

10  303 East 17th Avenue, Suite 650

11  Denver, Colorado 80203

12  Attorneys for Plaintiffs Quaterra Alaska, Inc.; *et al.*

13

14  Steven James Lechner

    Mountain States Legal Foundation

15  2596 S. Lewis Way

16  Lakewood, Co 80227

17  Attorney for Plaintiff Northwest Mining Association

18

19

20              Gregory Yount

               807 W. Butterfield Rd

21           Chino Valley, Arizona 86323

            928-899-7029

22          *gregory_yount@northern-arizona-uranium-project.com*

            *Plaintiff Pro Se*

4