**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gregory Yount, et. al., | No. CV11-08171-PCT-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Kenneth Lee Salazar, Secretary of the Interior, et al., | |
| Defendants. | |

Plaintiff Gregory Yount filed a motion to require supplementation of the Administrative Record ("AR") in these consolidated cases challenging federal agency action. Doc. 134. Federal Defendants filed a response in opposition (Doc. 137) and Mr. Yount filed a reply. Doc. 143. The parties have not requested oral argument. For the reasons stated below, the Court will deny the motion.

**I.   Background.**

Mr. Yount and a number of corporate, associational, and municipal plaintiffs filed complaints challenging the January 18, 2012 decision of the Secretary of the Interior to withdraw from mineral development over one million acres of public lands in the Grand Canyon Watershed in Northern Arizona. *See* Public Land Order No. 7787, 77 Fed. Reg. 2563-01, 2012 WL 122658 (January 18, 2012). As is relevant here, Plaintiffs assert claims under the National Environmental Policy Act ("NEPA"), which requires federal agencies to consider the environmental impact of any major federal action by, among other things, preparing an environmental impact statement ("EIS"). 42 U.S.C. § 4331, *et*

*seq.* Plaintiffs assert additional claims under the Federal Land Policy Management Act, the National Forest Management Act, and the Establishment Clause of the United States Constitution. Mr. Yount asserts six claims under NEPA, one of which also alleges violation of the Establishment Clause. Doc. 27.

In its January 8, 2013 order, the Court dismissed the NEPA claims of Mr. Yount and all but three plaintiffs because they lack prudential standing under NEPA. Doc. 87 at 47. The Court did not dismiss the non-NEPA claims, and Mr. Yount continues to be a plaintiff in this action. *Id.*

After Federal Defendants lodged and served the AR on February 11, 2013, Mr. Yount became aware that information he had sent to the BLM via email on May 18, 2012, disputing the agency's conclusions about the uranium endowment in the withdrawal area, had not been included. Doc. 134 at 2; *see, generally*, Doc. 134 at 5-19. Mr. Yount contacted counsel for Federal Defendants who explained that this information post-dated the Record of Decision ("ROD") and was therefore not included because it was not before the agency when it completed its final EIS and the Secretary issued his withdrawal decision. *Id.* at 2-3. Counsel's response also explained that since no further federal action remained with respect to the withdrawal, the requirement that the agency supplement its EIS on the basis of new information under 40 C.F.R. § 1502.9(c)(1)(ii) did not apply. *Id.*

Mr. Yount asks the Court to order Federal Defendants to supplement the AR with the emails he submitted to the BLM on May 18, 2012, as well as additional emails he submitted on March 3, 2012, and "any and all records after the date of the ROD that have resulted from new information or analyses." Doc. 134 at 3-4.

**II.   Discussion.**

**A.   Applicability of 40 C.F.R. § 1502.9(c)(1)(ii).**

NEPA's implementing regulations require federal agencies to supplement draft or final environmental impact statements where "[t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or

its impacts." 40 C.F.R. § 1502.9(c)(1)(ii). "[A]n agency need not supplement an EIS every time new information comes to light after the EIS is finalized" because to so hold "would render agency decisionmaking intractable, always awaiting updated information only to find the new information outdated by the time a decision is made." *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 373 (1989). Rather, the agency must apply a "rule of reason" that looks to "the value of the new information to the still pending decisionmaking process." *Id.* "Supplementation of a prior NEPA environmental analysis is only required where 'there remains major Federal action to occur.'" *Center for Biological Diversity v. Salazar*, 706 F.3d 1085, 1094 (9th Cir. 2013) (quoting *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 73 (2004)); *see also Marsh*, 490 U.S. at 374.

Mr. Yount notes that the ROD and Public Land Order issued on September 18, 2012, state that the withdrawal is "subject to valid existing rights." Doc. 143 at 2; *see* Public Land Order No. 7787, 77 Fed. Reg. 2563-01 at 2563. He argues that because these rights must be determined through mineral exams conducted by Federal Defendants, further federal action remains, and the withdrawal is not complete until the validity of all pre-existing claims is determined. Docs. 134 at 3; 143 at 2. The Court is not persuaded.

Even if, as Mr. Yount argues, hundreds or thousands of mining claimants in the withdrawal area seek mineral exams to demonstrate that their claims constitute pre-existing rights exempt from the withdrawal, this does not mean that the decision-making process with respect to the withdrawal itself is incomplete or that major federal action remains before the withdrawal is final. In *Bennet v. Spear*, 520 U.S. 154 (1997), the Supreme Court identified two criteria for determining when an agency action is final for purposes of judicial review: "First, the action must mark the consummation of the agency's decision-making process – it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* at 177-78 (internal citations and quotation marks omitted). Here, the Secretary's decision-making process as to

whether to withdraw certain lands from mining operations was complete when the Secretary issued his decision on September 18, 2012, and, as the Court has already found, legal consequences clearly flow from that decision.  *See* Doc. 87.

Mr. Yount argues that the withdrawal action is like the dam construction project approved in *Marsh*, 490 U.S. at 374, for which the Supreme Court found that significant federal action remained.  Doc. 143 at 4-5.  The Court does not agree.  In *Marsh*, dam construction was incomplete at the time the plaintiffs sought to have the agency consider new information regarding possible adverse effects on downstream fishing and water turbidity.  490 U.S. at 368-69, 373.  Here, nothing remained to be constructed or completed after the final EIS was completed and the withdrawal action went into effect.  The mineral exams to which Mr. Yount points were not required to effectuate the withdrawal; they are required to determine which unpatented mining claims may be exempt from the withdrawal.  Even if, as Mr. Yount asserts, it takes years for the appropriate federal agencies to conduct all the mineral exams needed to show which claims are exempt and which are not, this will have no bearing on the withdrawal decision itself.  The withdrawal has taken effect.

The Supreme Court's opinion in *Norton*, 542 U.S. at 73, is instructive.  In *Norton*, the Court recognized that approval of a land use plan "is completed when the plan is approved."  542 U.S. at 73.  Mr. Yount argues that *Norton* is inapposite because the approved plan in *Norton* only set guidelines for land use and did not define specific required future actions as does the withdrawal due to its being "subject to" valid existing rights that must be determined through required mineral exams.  Doc. 143 at 4-5.  As explained above, however, the fact that mineral exams are required to prove valid existing rights for purposes of exemption from the withdrawal has no bearing on the finality of the withdrawal itself.  Such exams may determine which mining claims are exempt from the withdrawal, but they will not alter the fact that the withdrawal is in effect as decided by the Secretary of the Interior.

The Ninth Circuit addressed an analogous situation in *Center for Biological*

*Diversity v. Salazar*, 706 F.3d 1085 (9th Cir. 2013). In *Salazar*, the plaintiffs had argued that BLM's issuance of new gravel and air quality permits and an updated reclamation bond for a mining operation that had been approved following proper NEPA procedures in 1988 required the agency to supplement its original EIS. *Id*. at 1095. The Ninth Circuit disagreed, finding that while the subsequent federal actions may have constituted "major federal action" sufficient to trigger their own NEPA requirements, "none of those actions affected the validity or completeness of the 1988 approval of the Arizona 1 Mine's plan of operations nor did they prevent Denison from mining under that plan." *Id.* Likewise, the pendency of future mineral exams, even if they constitute major federal action in their own right, will not affect the validity or finality of the withdrawal, particularly where that action already makes allowance for valid existing rights.

Mr. Yount argues that *Salazar* does not apply because the mineral exams in this case are "an integral part of" the ROD and Public Law Order effectuating the withdrawal. Doc. 143 at 3-4. Because the withdrawal is subject to valid existing rights, Mr. Yount argues, its full effect cannot be determined until all required mineral exams are complete. *Id.* at 3. The Court fails to see how conducting mineral exams will be any more integral to the withdrawal than the required permits and bonds in *Salazar* were to the approved mining plan. Here, as in *Salazar*, future federal actions may flow from a federal action governing permissible mining operations, but where those future actions have no impact on the validity or the finality of the initial action – in this case the withdrawal – the Ninth Circuit's finding that no supplemental EIS is required applies.

Mr. Yount's reasoning would require Federal Defendants to keep the original EIS process open indefinitely for any and all new information until all those with potentially valid claims had exhausted all available remedies for validating their claims. This not only would violate the "rule of reason" that requires agencies to consider new evidence only to the extent it has value to the "still pending decisionmaking process," *Marsh*, 490 U.S. at 373, it would also "render agency decisionmaking intractable" and ultimately frustrate the course of judicial review, *see id.*

**B.     Grounds for Considering Extra-Record Evidence.**

Courts reviewing agency action are generally limited to consideration of the administrative record in existence at the time of the challenged decision. *Fla. Power & Light Co., v. Lorion*, 470 U.S. 729, 734-44 (1985) ("'[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'") (quoting *Camp v. Pitts,* 411 U.S. 138, 142 (1973)); *Sw. Ctr. For Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) (same).  The Ninth Circuit has recognized four narrow exceptions to this rule: "(1) if admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) if the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith." *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (internal citations and quotation marks omitted).

Because Mr. Yount lacks NEPA standing, he cannot make NEPA claims in this case and cannot, therefore, seek supplementation of the AR in support of his NEPA claims.  Whether any other party can successfully seek to supplement the AR under the Ninth Circuit exceptions – with Mr. Yount's material or other material – is a matter that must be decided when the Court considers fully briefed arguments on the NEPA claims in this case.  The Court will not grant Mr. Yount's freestanding request that extra-record materials be considered.

**IT IS ORDERED** that Plaintiff Yount's motion to require supplementation of the Administrative Record (Doc. 134) is **denied**.

Dated this 29th day of May, 2013.

_____
David G. Campbell
United States District Judge

- 6 -