Melanie R. Kay (*pro hac vice*)
Edward B. Zukoski (*pro hac vice*)
Earthjustice
1400 Glenarm Place, Suite 300
Denver, CO  80202
mkay@earthjustice.org
tzukoski@earthjustice.org
Telephone: (303) 623-9466
Fax: (303) 623-8083

Roger Flynn (*pro hac vice*)
Western Mining Action Project
P.O. Box 349, 440 Main St., #2
Lyons, CO  80540
wmap@igc.org
Telephone: (303) 823-5738
Fax: (303) 823-5732

Attorneys for Defendant-Intervenors
        Grand Canyon Trust, <u>et al.</u>,

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gregory Yount,<br>        Plaintiff,<br><br>v.<br><br>Ken Salazar, Secretary of the Interior, <u>et al.</u>;<br>        Defendants | Case No. 3:11-cv-08171-PCT-DGC<br>(Lead case) |
| National Mining Association, <u>et al.</u>;<br>        Plaintiffs,<br><br>v.<br><br>Ken Salazar, Secretary of the Interior, <u>et al.</u>;<br>        Defendants | Case No. 3:11-cv-08038-PCT-DGC |
| Northwest Mining Association,<br>        Plaintiff,<br><br>v.<br><br>Ken Salazar, Secretary of the Interior, <u>et al.</u>;<br>        Defendants, | Case No. 3:12-cv-08042-PCT-DGC |

| | |
|---|---|
| Quaterra Alaska Incorporated, <u>et al.</u>,<br>          Plaintiffs, | Case No. 3:12-cv-08075-PCT-DGC |
| v. | |
| Ken Salazar, Secretary of the Interior, <u>et al.</u>;<br>          Defendants | |

**DEFENDANT-INTERVENORS GRAND CANYON TRUST ET AL.'S OPPOSITION TO NORTHWEST MINING ASSOCIATION ET AL.'S MOTION FOR FINAL JUDGMENT ON ITS SEVENTH CLAIM FOR RELIEF**

In this case, plaintiffs Northwest Mining Association (NWMA) and National Mining Association <u>et al.</u> (NMA) filed separate complaints seeking to overturn the Department of the Interior's (DOI's) January 2012 decision to place off limits to new mining claims one million acres of public land in the Grand Canyon watershed. Doc. # 1 (3:12-cv-08042-DGC) ("NWMA Complaint"); Doc. #1 (3:12-cv-08038-GMS) ("NMA Complaint"); Doc. #56 (3:12-cv-08038-GMS) ("NMA Amended Complaint"). NWMA raises seven claims; the first six allege that DOI violated numerous laws including the Federal Land Policy and Management Act (FLPMA), the National Forest Management Act (NFMA), and the National Environmental Policy Act (NEPA). NWMA Complaint ¶¶ 57-126. NWMA's seventh claim alleges that the mineral withdrawal should be set aside because the FLPMA provision authorizing large tract withdrawals contains an allegedly unconstitutional legislative veto. <u>Id.</u> ¶¶ 127-145. NWMA seeks common relief in each cause of action, asking the Court to set aside the Public Land Order mandating the mineral withdrawal. <u>See id.</u> ¶¶ 63, 74, 87, 105, 115, 126, 145.

NMA's complaint similarly raises a host of claims, alleging that the Department of the Interior violated NEPA and the Administrative Procedure Act (APA), as well as a claim challenging the withdrawal based on the legislative veto provision in FLPMA. NMA Amended Complaint at ¶¶ 97-121. NMA's complaint states that each of these claims is a basis for which the mineral withdrawal "should be declared unlawful and set aside." <u>Id.</u> at ¶ 2.

NMA in August 2012 and NWMA in January 2013 chose to move for summary judgment on just one of their numerous causes of action: their legislative veto claim. Doc. #73 (3:12-cv-08038-DGC) (NMA Partial Summ. J. Memo.); Doc. #90 (NWMA Partial Summ. J. Memo.). This Court denied NMWA's and NMA's motions, finding the legislative veto unconstitutional but severable, thus declining to set aside the Grand Canyon watershed mineral withdrawal. Doc. #130. The Court later denied NMWA's and NMA's motion to reconsider that ruling. Doc. #144. Following denial of the summary judgment motions, the Mining Associations joined all parties in submitting a proposed case management schedule that would allowed plaintiffs four months to review the administrative record, and two months after that to file opening briefs to resolve remaining claims. Doc. # 138.

Pursuant to Rule 54(b), NWMA and NMA (collectively, the Mining Associations) now ask this court to enter final judgment on their failed legislative veto claims so that they can pursue an appeal. Doc. # 146 (NWMA Motion); Doc. # 147 (NMA Joinder Notice). This Court should deny the Mining Associations' motions. This case is not an "unusual" one that requires piecemeal review by the appeals court. The legislative veto claim and the remaining claims share similar fact and legal issues, and the Mining Associations fail to demonstrate a harsh or unjust result should the veto claim not be certified. Certifying the constitutional claim for appeal would also risk imposing unnecessary costs on the courts and the other parties.

## STANDARD OF REVIEW

Rule 54(b) provides in part that when more than one claim for relief is presented in an action, the district court enter final judgment on fewer than all of the claims "only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). This determination "is left to the sound judicial discretion of the district court." Curtiss-Wright Corp. v. General Elec. Corp., 446 U.S. 1, 8 (1980). However, this discretion should be exercised "sparingly," Gausvik v. Perez, 392 F.3d 1006, 1009 n.2

1   (9th Cir. 2004)), and based upon "such factors as the interrelationship of the claims so as
2   to prevent piecemeal appeals." Curtiss-Wright Corp., 446 U.S. at 10.  See also Martinelli
3   v. Petland, Inc., No. CV-09-529-PHX-DGC, 2010 WL 1416512, at *1 (D. Ariz. Apr. 7,
4   2010) (quoting Gausvik, 392 F.3d at 1009 n.2).  "A similarity of legal or factual issues"
5   between the claim sought to be certified and the remaining claims "will weigh heavily
6   against entry of judgment under the rule, and in such cases a Rule 54(b) order will be
7   proper only where necessary to avoid a harsh and unjust result[.]" Frank Briscoe Co. v.
8   Morrison-Knudsen Co., 776 F.2d 1414, 1416 (9th Cir. 1985) (quotation omitted).  See
9   also Grand Canyon Trust v. U.S. Bureau of Reclamation, No. CV-07-8164-PHX-DGC,
10  2010 WL 3244893, at *1 (D. Ariz. Aug. 16, 2010) (quoting Frank Briscoe Co.).

11          Certification under Rule 54(b) is an extraordinary measure that is not to be granted
12  as a matter of course. Curtiss-Wright Corp., 446 U.S. at 5.  There exists "a long-settled
13  and prudential policy against the scattershot disposition of litigation," and "entry of
14  judgment under [Rule 54(b)] should not be indulged as a matter of routine or as a
15  magnanimous accommodation to lawyers or litigants." Spiegel v. Trustees of Tufts
16  College, 843 F.2d 38, 42 (1st Cir. 1988) (citations omitted).  "Judgments under Rule
17  54(b) must be reserved for the unusual case in which the costs and risks of multiplying
18  the number of proceedings and of overcrowding the appellate docket are outbalanced by
19  pressing needs of the litigants for an early and separate judgment as to some claims or
20  parties." Morrison-Knudsen Co., Inc. v. Archer, 655 F.2d 962, 965 (9th Cir. 1981).  See
21  also Grand Canyon Trust, No. CV-07-8164-PHX-DGC at *1 (quotation & citation
22  omitted); Wood v. GCC Bend, LLC, 422 F.3d 873, 882 (9th Cir. 2005) ("[w]e cannot
23  afford the luxury of reviewing the same set of facts in a routine case more than once
24  without a seriously important reason.").

25          A court must make specific written findings if it intends to grant a motion for
26  entry of judgment per Rule 54(b).  "Those findings should include a determination
27  whether, upon any review of the judgment entered under the rule, the appellate court will

28

be required to address legal or factual issues that are similar to those contained in the

claims still pending before the trial court."  Morrison-Knudsen Co., 655 F.2d at 965.

## ARGUMENT

**I.   Because The Claims For Which NWMA Seeks Entry Of Judgment Are Similar To The Unresolved Claims, The Court Should Deny The Mining Associations' Motion.**

The similarity of legal and factual issues in the claim the Mining Associations

seek to certify pursuant to Rule 54(b) and the plaintiffs' remaining claims weighs heavily

against granting the Mining Associations' motion.  See Frank Briscoe Co., 776 F.2d at

1416 (citation omitted).

All of the Mining Associations' claims are interrelated and share a common

factual nucleus because all are aimed at overturning a single federal agency action: the

mineral withdrawal.  NWMA acknowledges this:  "[A]ll of NWMA's claims arise from

the same event, namely the Secretary's withdrawal."  NWMA Motion at 5.  The Mining

Associations' complaints reinforce this conclusion.  For each of its claims, NWMA seeks

the same relief, namely setting aside the public land order implementing the withdrawal.

See supra at 1.  NWMA succinctly states the purposes of its action in the complaint's

introduction:  "NWMA seeks judicial review of [Federal] Defendants' actions in

withdrawing over 1 million acres of federal lands in northern Arizona."  NMWA

Complaint at 1.  Similarly, NMA describes its complaint as a challenge to the

environmental impact statement, record of decision, and the public land order

"withdrawing from location and entry … over one million (1,000,000) acres of federal

lands in northern Arizona."  NMA Amended Complaint at ¶ 1.  NMA's complaint states

that each of its claims is a basis for which the mineral withdrawal "should be declared

unlawful and set aside."  Id. at ¶ 2.  Further, without the mineral withdrawal, the Mining

Associations would have no arguable basis for a claim attacking the legislative veto,

because they cannot allege that the veto's mere existence provides them with standing or

gives rise to a case or controversy under Article III.  The factual issues concerning the

legislative veto claim are thus similar and interrelated with the facts involved in the Mining Associations' remaining claims.  The appeals court may thus be required to review in separate cases the related factual issues in two appeals.

The legal issues of all of the Mining Associations' claims, like the factual issues, are similar and interrelated.  The Ninth Circuit could face nearly identical legal issues in addressing the legislative veto and the remaining claims, risking inconsistent judgment from different appellate panels.  For example, Federal Defendants have argued that all of the Mining Associations' claims should be dismissed because the plaintiffs lack standing for all of their claims and because plaintiffs' claims are not ripe.  Doc. #39 (3:12-cv-08038-GMS) at 9 (NMWA has "have not satisfied these requirements [standing and ripeness] as to any of their claims").  See also Doc. #27 (3:12-cv-08042-DGC) at 10 (making similar assertion re: NMA).  Federal Defendants also indicate that they may continue to test plaintiffs' standing.  See Doc. #148.  While the District Court denied Federal Defendant's challenge to plaintiffs' standing at the motion to dismiss stage, Federal Defendants (or this Court, sua sponte) can raise standing at the merits stage, and both ripeness and standing could be tested on appeal.  If the Mining Associations are permitted to pursue their piecemeal appeal, the Court of Appeals may be required to address standing and ripeness not once but twice, in the context of the legislative veto claim and any remaining claims appealed, thus potentially requiring duplicative briefing and court consideration of the same facts and law, and raising the risk of inconsistent judgments.  Such redundancy and the possibility of inconsistent results contravenes federal policy which favors "sound judicial administration" and disfavors piecemeal appellate review.  Wood, 422 F.3d at 877 (quoting Curtis-Wright Corp., 466 U.S. at 8.).

NMWA argues that this Court should grant Rule 54(b) certification because the legislative veto claim relies on a different legal theory than the other claims.  NWMA Motion at 6.  However, the Ninth Circuit has cautioned that Rule 54(b) certification should not be granted when the appeals court would have to address legal or factual

1   issues similar to that still pending in the district court.  Morrison-Knudsen Co., 655 F.2d

2   at 965.  Even if the Mining Associations' legislative veto claim relies on a different

3   theory than plaintiffs' remaining claims, the veto claim is based on the same factual

4   issues as those still pending before this Court – the Secretary's withdrawal decision.

5   Further, some courts have held that presenting alternative legal theories is not enough, by

6   itself, to support Rule 54(b) certification if the legal theories arise from the same

7   occurrence or interaction.  See, e.g., Sherwin v. Infinity Auto Ins. Co., No. 2:11-CV-43

8   JCM(VCF), 2011 WL 5598344, at *2 (D. Nev. Nov. 16, 2011) (it was not proper for the

9   court to sever the plaintiff's bad faith causes of action from the rest of the case because

10  they are not distinct claims "but simply alternative legal theories"); Claver v. Coldwell

11  Banker Residential Brokerage Co., No. 08-cv-817-L(AJB), 2009 WL 1606611, at *2

12  (S.D. Cal. June 8, 2009) (denying Rule 54(b) certification because although plaintiff's

13  legal theories differed, the factual basis for the allegations was the same).  Presenting

14  alternative legal theories alone is not sufficient grounds for obtaining Rule 54(b)

15  certification.

16         Because the facts and law of the legislative veto claim are similar to those in the

17  remaining claims, this Court should exercise its discretion to certify the veto claim for

18  appeal only if the Mining Association can show that the failure to certify would work a

19  "harsh" or "unjust" result.  Frank Briscoe Co., 776 F.2d at 1416.  The Mining

20  Associations, however, never allege that the harm they may face rises to such a level.

21  The Mining Associations' failure to allege a harsh or unjust result is fatal to their motion.

22  See Grand Canyon Trust, No. CV-07-8164-PHX-DGC, 2010 WL 324489, at *2.[1]

23  **II.    Because Certifying The Legislative Veto Claim Risks Duplicative Appellate
         Filings, The Court Should Deny The Mining Association's Motion.**

24

25         Even if this court concludes that the legal and factual issues of the legislative veto

26  claim are unrelated to the remaining claims, the Court should deny NWMA's motion

27  _____

    [1]  NWMA does allege some harm from failure to certify the legislative veto claim, but
28  they do not allege such harm is "harsh" or "unjust."  We respond to the allegations of
    harm infra at 11 n.5.

                                              6

1    because certifying the veto ruling risks placing an unnecessary burden on the appellate

2    court, and because any harm to the Mining Associations is largely self-inflicted.

3         "[I]n deciding whether there are no just reasons to delay the appeal of individual

4    final judgments in setting such as this, a district court must take into account judicial

5    administrative interests as well as the equities involved."  Curtiss-Wright Corp., 446 U.S.

6    at 8.  The paramount judicial administrative interest is in avoiding "[d]uplication of

7    proceedings," Wood, 422 F.3d at 882, including the "risk[]of multiplying the number of

8    proceedings and of overcrowding the appellate docket."  Morrison-Knudsen Co., 655

9    F.2d at 965.  The Ninth Circuit has been particularly sensitive to the risks of duplicative

10   appeals because of the "huge" number of cases in its docket.  Wood, 422 F.3d at 882-83.[2]

11        Here, there is significant risk that Rule 54(b) certification of the Mining

12   Associations' legislative veto claim will lead to "multiplying the number of proceedings

13   and overcrowding" the Ninth Circuit's docket.  The Mining Associations failed in this

14   Court on their legislative veto claim and are likely to fail before the Court of Appeals.  As

15   the United States noted at oral argument on the Mining Associations' summary judgment

16   motions, the Mining Associations failed to identify a single federal court decision – and

17   the United States found none – where a court severed any part of a statute beyond the

18   legislative veto in cases where the statute, like FLPMA, contained a severability clause.

19   Thus in the likely event that the Ninth Circuit upholds this Court's ruling on the

20   legislative veto, a second appeal on the remaining claims (scheduled to be briefed in this

21   Court late this year and early next) is possible, even likely.  Rather than expediting a

22   conclusion to this case before the appeals court, there is a significant risk that certifying

23   the Court's order on the legislative veto claim will serve to bifurcate the case, resulting in

24   two appeals where otherwise there would be only one consolidated appeal on all claims.

25   The Ninth Circuit has specifically declined to certify a partial judgment for appeal on

26

27   _____
     [2]  In 2012, nearly thirteen thousand appeals were filed with the Ninth Circuit Court of
28   Appeals.  See http://www.ce9.uscourts.gov/statistics/appeals_court.pdf (last viewed
     July 1, 2013).

such grounds.  See, e.g., Wood, 422 F.3d at 883 (denying motion for entry of judgment under Rule 54(b) where "[i]nstead of one appeal that we could now resolve, certification makes it likely there will be two").

In addition, if this court declines to certify the legislative veto claim and addresses the remainder of the Mining Associations' claims, there is a chance that there may be no appeal at all.  The Mining Associations cannot appeal a district court ruling in their favor. If this Court vacates the mineral withdrawal based on any of the Mining Associations' remaining claims, the Mining Associations cannot be harmed by a vacated withdrawal, and thus will have no standing to appeal the legislative veto claim.  See Quinn v. Milsap, 491 U.S. 95 (1989) (court must satisfy itself that a case or controversy remains at appellate level).  The Ninth Circuit has held that one compelling reason for not certifying an issue for appeal is the chance that the appeals court need never reach the certified claim.  See Wood, 422 F.3d at 882 ("absent certification, we may never have to decide" the claim certified).

Further, if this Court grants the Mining Associations' motion and does not stay the remainder of the case, it is likely that any appeal of a district court decision on the remaining claims would be taken and briefed while the Ninth Circuit continues to weigh the legislative veto claim.  Under the current Case Management Order, the parties could complete briefing on the merits in April 2014; a ruling would likely come shortly thereafter.  See Doc. #141.  The Ninth Circuit advises that it hears argument on civil cases "approximately 12-20 months" after the notice of appeal.  See U.S. Courts for thje Ninth Circuit, Frequently Asked Questions, http://www.ca9.uscourts.gov/content/faq.php (last visited July 1, 2013).  A written order can take another 6-12 months or longer following argument.  All told, it could be 2015 or even 2016 before the Court of Appeals rules on the legislative veto claim if it is certified.  Thus, there is a significant risk that certification will result in two appeals pending simultaneously in the Ninth Circuit, a

1  result that will burden the appeals court and the parties.  This risk weighs heavily against

2  granting the Mining Associations' motion.

3    Despite these risks, NWMA argues that "Rule 54(b) certification … will help to

4  'streamline the ensuing litigation,' <u>Texaco, Inc. v. Ponsoldt</u>, 939 F.2d 794, 797-98 (9th

5  Cir. 1991), because the Ninth Circuit may not have to expend judicial resources resolving

6  the other issues in this case."  NWMA Motion at 7.  NWMA overstates its case.  There is

7  no guarantee that certifying the legislative veto claim "<u>will</u> streamline" this case.

8  <u>Texaco</u>, 939 F.2d at 798 (emphasis added).  <u>See also id.</u> at 797 ("Rule 54(b) certification

9  is proper if it <u>will</u> aid 'expeditious decision' of the case." (emphasis added) (citation

10  omitted)).  In fact, just the opposite; certification is more likely to result in two trips to

11  the appeals court rather than one.  Such a risk has led courts to deny Rule 54(b) motions.

12  <u>See</u>, e.g., <u>U.S. Fire Ins. Co. v. Williamsburg Nat'l Ins. Co.</u>, 2009 WL 650578 at *4, No.

13  1:07-cv-00718 GSA (E.D. Cal. March 12, 2009) (declining to certify claim for appeal

14  where one <u>potential</u> ruling from the appeals court on the certified claim would result in

15  two appeals).  Rather than "streamlining" the case by eliminating the "risk[]of

16  multiplying the number of proceedings and of overcrowding the appellate docket,"

17  <u>Morrison-Knudsen Co.</u>, 655 F.2d at 965, granting the Mining Associations' motion

18  would increase that risk.

19    NWMA further alleges that certification is warranted because the issue at stake is

20  one of "widespread importance that has not been definitively resolved by the Ninth

21  Circuit."  NWMA Motion at 7.  While the issue at stake may have broad implications for

22  public lands management if NWMA prevails, the Ninth Circuit has not "definitively

23  resolved" the issue because until now no one has ever legally challenged the FLPMA

24  provision in the nearly 37 years the Interior Department has exercised its authority to

25  make large-tract withdrawals.  NWMA does not explain why the Court of Appeals must

26  now urgently address the Mining Associations' idiosyncratic legal theory.[3]  Nor does the

27
                       
28  [3]  The fact that the Mining Associations seek to appeal an adverse decision on a
constitutional issue is not, by itself, sufficient to justify immediate appeal.  <u>See</u> <u>Blair v.</u>

9

1   Ninth Circuit case NWMA cites support its argument.  Purdy Mobile Homes, Inc. v.

2   Champion Home Builders Co. upheld a district court's Rule 54(b) certification in part

3   because the resolved claim involved "an interpretation of [an] Act on which there is some

4   disagreement among the courts."  594 F.2d 1313, 1316-17 (9th Cir. 1979) (emphasis

5   added), cited by NWMA Motion at 8.  Here, there is no "disagreement among the courts"

6   over the claim at stake because no plaintiff has ever before asked a court to pass

7   judgment on the constitutionality of the FLPMA legislative veto challenged here, and

8   because courts have uniformly found legislative vetoes severable where the statute

9   contained a severability clause.  Further, the district court in Purdy concluded that

10  certification would clarify a legal issue at the appeals court that would assist the district

11  court in a subsequent trial, or avoid the necessity of a second trial.  Purdy, 594 F.2d at

12  1316-17.  That is not the case here, where a ruling affirming the district court would

13  likely have little impact on this Court's evaluation of the remaining claims.  Finally,

14  Purdy does not support NWMA's argument that a court should grant a Rule 54(b) motion

15  because of a movant's subjective belief that the claim at issue is of "great importance."

16  NWMA Motion at 8.

17          Granting the Mining Associations' motion would not only risk burdening judicial

18  economy, but the equities do not favor certifying the veto claim.  NWMA alleges its

19  members would face financial harm from waiting an extra year or so for the district court

20  to resolve this case's remaining claims.  Id. at 8-9.  However, whatever harm NWMA's

21  members face is largely self-inflicted.  The Mining Associations chose to bifurcate each

22  of their cases, testing their constitutional argument first, rather than litigating all of their

23  claims together.  They then agreed to a proposed schedule that would have allowed them

24  half a year to review the administrative record and file their opening brief to resolve the

25  remaining claims.  Doc. # 138.  If the Mining Associations were so deeply concerned

26

27  Shanahan, 38 F.3d 1514, 1522 (9th Cir 1994) (declining to overturn district court
    decision not to certify for appellate review a decision on a claim that a state panhandling
28  statute violated the U.S. Constitution).

10

1   about their members' financial harm, they could have sought preliminary relief on all of

2   their claims at once, or pressed for an expedited briefing schedule.  They did neither.  The

3   Mining Associations cannot complain now of the harm they may face that is due in large

4   part to their own tactical maneuvering.[4]  In these circumstances, the Mining Associations

5   fail to show a "pressing need" for immediate appellate review.  See Frank Briscoe Co.,

6   776 F.2d at 1416.[5]

7                                   **CONCLUSION**

8          For the reasons set forth above, this Court should deny NWMA's motion.

9

10  Respectfully submitted July 1, 2013.

11

12   /s/ Edward B. Zukoski
     Melanie R. Kay (*pro hac vice*)
     Edward B. Zukoski (*pro hac vice*)
13   Earthjustice
     1400 Glenarm Place, Suite 300
14   Denver, CO  80202
     mkay@earthjustice.org
15   tzukoski@earthjustice.org
     Telephone: (303) 623-9466
16   Fax: (303) 623-8083

17

18  _____
19  [4]  NWMA and/or NMA could also dismiss their remaining claims to obtain immediate
    review of the legislative veto claim.  See Building Industry Ass'n of Superior California
20  v. Norton, 247 F.2d 1241 (D.C. Cir. 2001) (trade association dismisses claims resulting in
    remand to obtain circuit court review of remaining claims).

21  [5]  Further, NWMA's memo implies greater potential financial harm to its members than
    would likely result from the twelve months or so it will likely take to resolve the
22  remainder of this case before this Court.  NMWA alleges that 3,000 mining claims are
    located within the withdrawn area, which could lead to the payment of $420,000 in
23  maintenance fees while the withdrawal allegedly "prevents NWMA members from
    developing their claims unless they submit to an expensive and time-consuming validity
24  examination."  NWMA Motion at 9.  Even assuming that the withdrawal prevents all
    development of existing claims (which it does not), NWMA does not indicate how many
25  of the 3,000 total claims its members hold.  Further, given that BLM predicted that only
    36 exploration projects and about one new mine would be developed each year if the
26  withdrawal were not in effect, NWMA members would likely be doing little besides
    paying maintenance fees on the vast majority of their claims even if the withdrawal were
27  set aside immediately.  BLM, Final EIS, Northern Arizona Proposed Withdrawal (Oct.
    2011) at 2-11 – 2-13; Admin Rec. 1665-67 (likely number of exploration projects and
28  mines developed annually under the "no action" (i.e., the "no withdrawal") alternative).

                                        11

Roger Flynn *(pro hac vice)*
Western Mining Action Project
P.O. Box 349, 440 Main St., #2
Lyons, CO  80540
wmap@igc.org
Telephone: (303) 823-5738
Fax: (303) 823-5732

Attorneys for Grand Canyon Trust, the Havasupai Tribe,
Center for Biological Diversity, Sierra Club, and
National Parks Conservation Association

**CERTIFICATE OF SERVICE**

I hereby certify that I have caused the foregoing DEFENDANT-INTERVENORS GRAND

CANYON TRUST ET AL.'S OPPOSITION TO NORTHWEST MINING

ASSOCIATION ET AL.'S MOTION FOR FINAL JUDGMENT ON ITS SEVENTH

CLAIM FOR RELIEF to be served upon counsel of record through the Court's electronic

service system (ECF/CM) and by first class mail to Gregory Yount at the following address:

807 West Butterfield Road, Chino Valley, Arizona 86323.

Respectfully submitted July 1, 2013.

 /s/ Edward B. Zukoski