**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gregory Yount, et al., | No. CV-11-08171-PCT-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Sally Jewell, Secretary of the Interior, et al.,[1] | |
| Defendants. | |

Plaintiff Northwest Mining Association ("NWMA") has filed a motion that Plaintiff National Mining Association ("NMA") has joined asking the Court to enter final judgment on counts seven and one of their respective complaints pursuant to Federal Rule of Civil Procedure 54(b).  Docs. 146, 147.  Federal Defendants and Defendant-Intervenors have filed responses in opposition (Docs. 148, 149), and NWMA and NMA have filed replies.  Docs. 150, 151.  For the reasons set forth below, the Court will deny the motion.

**I.     Background.**

On January 9, 2012, the Secretary of the Department of Interior issued a record of decision and public land order pursuant to subsection 203(c)(1) of the Federal Land Policy Management Act ("FLPMA") withdrawing over one million acres of public lands in the Grand Canyon watershed from mineral location and entry subject to valid existing

---

[1] Secretary of the Interior Sally Jewell is automatically substituted as Defendant for former Secretary of the Interior Kenneth L. Salazar pursuant to Fed. R. Civ. P. 25(d).

rights.  77 Fed. Reg. 2563-01 (Jan. 18, 2012).  NWMA, NMA, and a number of mining and municipal plaintiffs filed complaints in this now-consolidated action challenging the Secretary's decision under the Administrative Procedure Act ("APA") for alleged violations of various federal laws, including the FLPMA and the National Environmental Policy Act ("NEPA").  NWMA and NMA additionally challenged the Secretary's statutory authority to make the withdrawal because subsection 203(c)(1) of the FLPMA contains a legislative veto that they alleged was unconstitutional under *INS v. Chadha*, 462 U.S. 919 (1983), and was not severable from the rest of the Act, making the Secretary's decision without legal effect.  *See* 12-cv-08042-DGC, Doc. 1, ¶¶ 127-145; 12-cv-0838-DGC, Doc. 56, ¶¶ 97-107.

NWMA and NMA filed motions for partial summary judgment on their *Chadha* claims (Docs. 73, 90), and Defendants and Defendant-Intervenors filed cross motions for partial summary judgment.  Docs. 101, 102.  On March 20, 2013, the Court denied NWMA's and NMA's motions and granted Defendants' and Defendant-Intervenors' cross motions.  Doc. 130.  The Court found that although the legislative veto in subsection 203(c)(1) was unconstitutional under *Chadha*, the veto was severable from the rest of the Act and therefore did not invalidate the Secretary's authority to make the withdrawal.  *Id.*  The Court reaffirmed this finding on reconsideration.  Doc. 144. NWMA and NMA now ask the Court to enter a final judgment on their *Chadha* claims in order to make them immediately appealable to the Ninth Circuit.  They argue that these claims are factually and legally separable from the remaining claims in the consolidated action, and there is no just reason for delay.

## II.    Legal Standard.

Rule 54(b) provides that when more than one claim for relief is presented in an action, or when multiple parties are involved, the district court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties "only if the court expressly determines that there is no just reason for delay."  Fed. R. Civ. P. 54(b). "'A similarity of legal or factual issues will weigh heavily against entry of judgment

1   under the rule, and in such cases a Rule 54(b) order will be proper only where necessary
2   to avoid a harsh and unjust result[.]'"  *Frank Briscoe Co. v. Morrison-Knudsen Co.*, 776
3   F.2d 1414, 1416 (9th Cir. 1985) (citation omitted).  "'Judgments under Rule 54(b) must
4   be reserved for the unusual case in which the costs and risks of multiplying the number of
5   proceedings and of overcrowding the appellate docket are outbalanced by the pressing
6   needs of the litigants for an early and separate judgment as to some claims or parties.'"
7   *Id.*; *see Gausvik v. Perez*, 392 F.3d 1006, 1009 n.2 (9th Cir. 2004) ("[I]n the interest of
8   judicial economy Rule 54(b) should be used sparingly.").

9   **III.   Discussion.**

10          NWMA and NMA (hereinafter "Plaintiffs") argue that although all of the claims
11   in the consolidated action arise from the same withdrawal decision, the only fact relevant
12   to their *Chadha* claims is the Secretary's assertion of authority pursuant to subsection
13   203(c)(1).  Docs. 146 at 7, 150 at 3-4.  They further argue that an appeal of these claims
14   would not require review of the Administrative Record as a potential appeal of the APA
15   claims would, and the constitutional issue presented here is entirely separate from the
16   legal issues in those claims.  Doc. 146 at 8-9.  These arguments notwithstanding, appeal
17   of the Court's *Chadha* ruling prior to resolution of the remaining claims still presents the
18   likelihood of piecemeal appeals.  In such event, separate panels of the Ninth Circuit
19   would have to familiarize themselves with the basic facts of the withdrawal and the facts
20   Plaintiffs have asserted to show Article III standing, calling for at least some duplication
21   in factual and legal analysis.[2]  Separate appeals would also risk "multiplying the number

22   _____

23   [2] NMA acknowledges that Defendants could raise standing issues on appeal if the
     Court grants its 54(b) motion, but argues that resolution of those issues may obviate the
24   need for the Ninth Circuit to consider them a second time.  Doc. 151 at 3-4.  This
     presumes that appeal of the Court's *Chadha* ruling would be resolved before the
25   remaining claims in this case are adjudicated and ripe for appeal, something that is not at
     all certain where appellate arguments on civil cases occur "approximately 12-20 months"
26   after the notice of appeal, and decisions usually come months after arguments.  *See* U.S.
     Courts for the Ninth Circuit, Frequently Asked Questions, *http://www.ca9.uscourts.gov/*
27   *content/faq.ph*; Doc. 141.  This Court will rule on the remaining claims in this case before
     any 54(b) appeal likely would be heard.  *See* Case Management Order, April 23, 2013,
28   Doc. 141.  In addition, any second appeal might well require standing analysis for the
     plaintiffs in this case who would not be part of the 54(b) appeal, requiring two Ninth
     Circuit panels to wrestle with the standing issues in this case.

of proceedings and overcrowding the appellate docket." *Curtiss-Wright Corp. v. General Elec. Corp.*, 446 U.S 1, 8 (1980). "Absent a seriously important reason . . . the interests of judicial administration counsel against certifying claims or related issues in remaining claims that are based on interlocking facts, in a routine case, that will likely lead to successive appeals." *Wood v. GCC Bend, LLC*, 422 F.3d 873, 882-83 (2005).

Plaintiffs argue that allowing advance appeal of the *Chadha* issue would help "streamline the ensuing litigation," *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 797-98 (9th Cir. 1991), because it could be dispositive as to the legality of the withdrawal and avert the need for the Ninth Circuit to consider appeals related to any remaining claims. Doc. 146 at 9. The Court is not persuaded, however, that separate certification will increase judicial efficiency because the Ninth Circuit could also uphold this Court's finding on the *Chadha* issue, in which case it would still need to address any appeal of the remaining claims. Additionally, as Defendant-Intervenors argue, it is possible that resolution of the remaining claims in Plaintiff's favor could eliminate the case or controversy required for appeal of the constitutional issue before that appeal is decided. Doc. 149 at 10; *see Quinn v. Milsap*, 491 U.S. 95, 103 (1989) (noting that a case on appeal must retain the essentials of an adversary proceeding). The possibility that the Ninth Circuit need not reach this issue on appeal weighs against separate certification. *See Wood*, 422 F.3d at 882 (reversing certification and dismissing an appeal where "absent certification, we may never have to decide whether Wood was constructively discharged as a matter of law."). Even if, as NWMA argues, Plaintiffs would seek to appeal the Court's *Chadha* ruling even if the Court remanded the Secretary's withdrawal decision because a successful appeal of the constitutional issue would vacate that decision while a remand might not (*see* Doc. 151 at 5-6), Plaintiffs would still have the ability to appeal that decision once all of its claims are adjudicated, and the Court is not persuaded that they have presented compelling reasons to do so now.

Plaintiffs rely on *PAETEC Commc'n, Inc. v. MCI Commc'n Serv., Inc.*, 784 F.Supp.2d 542, 548 (E.D. Pa. 2011), for the proposition that previously unresolved issues

1    of widespread importance weigh in favor of immediate appeal.  Doc. 146 at 9-10.

2    *PAETEC* involved an issue of first impression of importance to the telecommunications

3    industry.  784 F.Supp 2d at 548.  Plaintiffs argue that the judgment they seek to appeal is

4    likewise of great importance to the mining industry and has widespread ramifications.

5    Doc. 146 at 10.  The Court is not persuaded that this fact alone demonstrates a particular

6    need for the Ninth Circuit to take immediate appeal on an issue that has not heretofore

7    been raised in the nearly four decades that the Secretary has exercised withdrawal

8    authority, particularly where the remaining claims are set for resolution in a matter of

9    months and all appealable issues may be raised at that time.

10       Plaintiffs' citation to the Ninth Circuit's ruling in *Purdy Mobile Homes, Inc. v.*

11   *Champion Home Builders Co.*, 594 F.2d 1313 (9th Cir. 1979), is also unavailing.  In

12   *Purdy*, the Ninth Circuit affirmed the district court's finding that there was no just cause

13   for delay in entering final judgment on an interpretation of a federal act for which there

14   was disagreement among the courts and reversal would likely necessitate a second trial.

15   594 F.2d at 1316-17.  Here, there is no judicial disagreement on the severability of the

16   unconstitutional veto in subsection 203(c)(1), and even if the Ninth Circuit reverses this

17   Court's ruling, this outcome would, at most, moot Plaintiffs' remaining claims, not

18   necessitate further proceedings or require the equivalent of a second trial.

19       Plaintiffs argue that their members will suffer substantial economic harm if the

20   Court does not grant their 54(b) motion because they must pay annual maintenance fees

21   of $140 per claim to maintain claims in the withdrawn area even while the challenged

22   withdrawal prevents them from developing these claims without first undergoing costly

23   and time-consuming mineral exams.  Doc. 146 at 10-11.  Plaintiffs state that records in

24   this case indicate that there are at least 3,000 mining claims located in the withdrawn

25   area, leading to $420,000 in fees payable annually to the Department of Interior, and this

26   outweighs the costs and potential for duplication that would result from separate appeals.

27   *Id.* at 11.  Defendant-Intervenors argue that these losses are exaggerated because the

28   withdrawal does not preclude development of all existing claims, and, even if it does,

1   Plaintiffs do not identify how many of the asserted 3,000 claims belong to their members.
2   Doc. 149 at 12, n. 5.  The Court need not resolve these factual issues because Plaintiffs
3   have not shown that their members would likely develop a substantial number of these
4   claims during the pendency of this case even if the Court granted its motion and the Ninth
5   Circuit were to reverse its finding on Plaintiffs' *Chadha* claims.[3]  Although the Court is
6   mindful that Plaintiffs are suffering and will continue to suffer economic harm as they
7   await the ability to develop their mining claims, the Court is not persuaded that, with
8   final briefing on Plaintiffs' motions for summary judgment set to be completed by April
9   2014 (*see* Doc. 141), this harm is made substantially greater by having to wait to file a
10  single appeal after final judgment on all claims.

11       The Court will exercise its discretion and deny Plaintiffs' motion for entry of
12  judgment under Rule 54(b).  *See Blair v. Shanahan*, 38 F.3d 1514, 1522 (9th Cir. 1994)
13  (district court did not err in denying Rule 54(b) request where a short trial was to begin in
14  only four months and the entire case could be reviewed after trial); *In re Lindsay*, 59 F.3d
15  942, 951 (9th Cir. 1995) (holding that the bankruptcy court erred in entering partial final
16  judgment under Rule 54(b) and warning about the "dangers of profligate Rule 54(b)
17  determinations"); *Sanchez v. Maricopa County*, No. CV 07-1244-PHX-JAT, 2008 WL
18  2774528, at *1 (D. Ariz. July 14, 2008) ("The Court finds that this is not the rare case
19  that justifies sending up piecemeal appeals to the Circuit Court.  Plaintiff has not shown
20  the sort of pressing needs contemplated by a grant of a 54(b) motion, and denial of his
21  motion will not lead to a harsh or unjust result.").

---

[3] Defendant-Intervenors note that the Bureau of Land Management ("BLM") estimated in its Final EIS that under the "no action alternative," meaning absent the withdrawal, an estimated 30 uranium mines could be developed in the withdrawal area over the next 20 years for an average of 1.5 per year.  *See* BLM, Final EIS, Northern Arizona Proposed Withdrawal (Oct. 2011) at 2-11 to 2-13, *available at http://www. blm.gov/az/st/en/info/nepa/environmental_library/ eis/ naz-withdraw.html*.

1   **IT IS ORDERED** that Plaintiff NWMA's motion for final judgment (Doc. 146)

2   which Plaintiff NMA joins (Doc. 147) is **denied**.

3   Dated this 12th day of July, 2013.

4

5

6

7   _____
    David G. Campbell
    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28